OF THE

## STATE OF LOUISIANA.

### WESTERN DISTRICT:

ALEXANDRIA....OCTOBER, 1832.

| 4 | 477 |
|---|---|
| 120 | 165 |

---

HEIRS OF KEMPE vs. HUNT ET AL.

APPEAL FROM THE COURT OF THE SEVENTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

WESTERN DIS.
October, 1832.

KEMPE'S HEIRS
vs.
HUNT ET AL.

Where exceptions to the form of action are pleaded but not decided on, and the parties proceed on the merits to judgement, the exceptions will be considered as waived on the appeal.

Novation is never presumed. The intention to make it must result clearly from the terms of the agreement, and by a full discharge of the original debt, or by substituting a new debtor in place of the old one, with the consent of the creditor.

Husbands may collect debts due to their wives, and curators and tutors those due to their wards, and give valid acquittances therefor; but to legally novate and release a debt, the novation must be clearly established to give validity to the release.

A demand in reconvention can only be made in, and must be limited to the jurisdiction which has cognizance of the principal demand to which it is pleaded.

So, in an action properly cognizable in the District Court, the defendant cannot set up a claim in reconvention for advances of money made as tutor; the settlement of his account as such, is exclusively cognizable in the Probate Court.

This is a hypothecary action instituted against Francis S. Gerault, for the recovery of eight thousand five hundred dollars, the price of the late James Kempe's half of a plantation, called and known as the Rifle Point Plantation, and nineteen slaves, held by him and Gerault in partnership, and now sold at the probate sale of Kempe's succession, and purchased by Gerault; and also against Thomas Hunt, as the third possessor of this property, which is subject to the vendor's privilege and mortgage in his hands.

James Kempe had six children and heirs at his death, three daughters, all married, and three sons, minors, who are the plaintiffs. Gerault, the defendant, married one of the daughters. After he purchased this property at the probate sale of Kempe's estate, on the 5th day of May, 1827, he sold and conveyed it to the Bank of Mississippi, for nineteen thousand dollars. In order to get it released from the vendor's privilege and special mortgage, he gets his wife, Jane Kempe, to mortgage to the heirs of Kempe, her undivided sixth part of another plantation in the parish of Concordia, called the Marengo plantation, and he executed his three notes for the above sum of eight thousand five hundred dollars, endorsed by James Gerault, which he deposited with the parish judge of Concordia, in lieu of those given at the probate sale, which were surrendered to him by the judge. He then got the husbands of the other two daughters, and the curator and tutor of the three minor sons and heirs of Kempe, to execute a release of the mortgage on the Rifle Point Plantation and the slaves sold at the probate sale, without the consent of a family meeting, or before payment of the mortgaged debt.

WESTERN DIS.
October, 1832.

KEMPE'S HEIRS
vs.
HUNT ET AL.

In May, 1827, Gerault sold and conveyed the Rifle Point Plantation and slaves to the Bank of Mississippi, for nineteen thousand dollars. And in September following, the bank sold and conveyed the same property to Thomas Hunt, the person now in possession.

. In February, 1829, Jane Kempe, wife of the defendant Gerault, went before the parish judge and protested against the act of mortgage, executed by herself and husband on the Marengo plantation, and disavowed the whole proceeding.

It does not appear that the new notes executed and delivered to the parish judge, in lieu of the ones given at the probate sale of the plantation and slaves, ever came into the hands of the plaintiffs, or were accepted by them.

The plaintiffs aver the debt of eight thousand five hundred dollars is still due, with the vendor's privilege and mortgage existing on the Rifle Point plantation and slaves; they pray judgement against Gerault, and that the plantation and slaves may be seized in the hands of Hunt, the third possessor, and sold, to satisfy their debt, interest and costs.

Hunt answered, and excepted to the manner of instituting the suit against him; that he was not a debtor of the plaintiffs. He cited his vendor in warranty, &c. There was judgement against all the defendants, and they all appealed.

*Rost* and *Dunbar*, for the plaintiffs:

1. A mortgage is a real right; and tutors, &c. of minors, cannot mortgage or alienate the immovables of the minor, which can only be done with the advice of a family meeting and the order of the judge. *L. Code*, 3249, 334–5.

2. Both the mortgages in this case were executed at the time the release was given in discharge of the one on the Rifle Point plantation; and a release of one of them could not be considered as a novation of the original debt. *Lou. Code*, 2181.

3. The husbands could not alienate a real right or immovable property of their wives, by a declaration simply that their wives consented.

WESTERN DIS.
October 1832.

HEIRS OF
KEMPE
vs.
HUNT ET AL.

4. The mortgage on the Marengo plantation and the notes executed by Gerault and wife were void, because the wife cannot bind herself for the debts of her husband. *L. Code,* 2412.

5. The release of the mortgage on the Rifle Point plantation was a gratuitous disposition of the property of minors, which is forbidden by law. *L. Code,* 349. 2 *Toullier, p.* 387-8.

6. Admitting the solvency of the endorser of the new notes taken, the tutor had no right to take personal security for a debt due to minors, in place of a mortgage, which is a security of a higher nature.

7. The action is properly brought. The plaintiffs were not compelled to pursue the executory process, if they preferred the ordinary.

*A. Ogden,* for the defendants, made the following points in argument:

1. The plaintiffs do not possess either the proper authority or capacity to institute and maintain this suit. *Code of P.* 106—10.

2. The action against the third possessor (Hunt) has not been pursued according to the formalities prescribed by law; no demand having been made on the debtor thirty days previous to instituting suit. *Code of P.* 42, 61, 69-70. *La. Code,* 3361, 3—6. 2 *Mar. N. S.* 505. 6 *Mar. N. S.* 309.

3. The original debt for which the mortgage was given on the Rifle Point plantation, was novated. The curator and tutor of the minors, administering their property, had a right to make such novation; and the debt being the paraphernal effects of the married women, administered by their husbands who had control of their personal actions, were also authorized to novate the debt. *Pothier Traite des Obligations, No.* 555. 5 *Mar. N. S.* 705. *Code of P., arts.* 3, 12, 107. *La. Code,* 2186.

4. The effect of the novation released the mortgage, which was only an accessory of the debt. *Toullier Traite des Ob.* No. 297. *La. Code*, 3252, 3374.

5. The public act of release, executed by the husband of the married women, and the curator and tutor of the minors, to whom a valid payment might have been made, affords complete protection to the third possessor (Hunt) and to the Bank. These persons were, therefore, competent to execute that release. 10 *Merlin Rep. Jur.* 583. *Toullier Contrat de Marriage*, No. 203, 380, 1—4. *La. Code*, 3335. *Code of P.* 3, 12, 107. 5 *Mar. N. S.* 651.

6. The security for the new debt, which was substituted for the old one, was fully sufficient; and the situation of the minors was not rendered worse thereby.

7. The appointment of a curator to the minors was regular, and even if irregular, their acts are binding until the appointment is revoked or annulled in the Court of Probates, where it was made. 2 *La. Rep.* 249. 1 *ibid* 18. *La. Code*, 360, 364.

8. Only the undivided half of the Rifle Point plantation and negroes, were sold to Gerault, and remained mortgaged to secure the purchase money; the judgement is erroneous in decreeing the whole property to be sold.

9. The demand in reconvention filed by Gerault, was improperly dismissed, and the case ought to be referred to auditors, to report how much of the money received by Gerault from the bank, passed to the benefit of the plaintiffs. 2 *Mar. N. S.* 73. 12 *Mar. N. S.* 483.

10. Mrs. Gerault could not intervene in this suit and obtain a judgement against her husband; therefore, her plea in reconvention, should have been dismissed.

11. The judgement on its face is erroneous, and ought to be corrected.

MATHEWS, J., delivered the opinion of the court.

This is a suit against the third possessor of mortgaged property, to cause it to be seized and sold to satisfy a debt

claimed by the plaintiffs. The mortgagor and original debtor is also made a party. The possessor is the immediate vendee of the bank of the state of Mississippi, represented by its president and trustee, who is cited in warranty, and who cites in warranty the vendor to the bank. Judgement was rendered in the court below against the mortgagor and the third possessor, and in favor of the latter against the bank, and in their favor against their vendor, on the several claims in warranty; from which all the defendants appealed. Excep-

*Where exceptions to the form of action are pleaded, but not decided on, and the parties proceed on the merits to judgment, the exceptions will be considered as waived on the appeal.*

tions were pleaded to the manner in which the suit was commenced, and to the capacity of the plaintiffs to prosecute it. It does not appear in the record, that any judgements were pronounced on these exceptions; and as the parties proceeded to trial on the merits, without requiring the exceptions to be decided on, it may properly be considered that they were waived.

The plaintiffs, in support of their claims, rely on a probate sale of the property, which they pray may be seized and sold. At this sale, their undivided half of a plantation and slaves, were adjudicated to F. S. Gerault, on which a mortgage was stipulated to secure the payment of the price.

The evidence of the case shows the sale and mortgage, and consequently the right of the plaintiffs to judgement against the original purchaser, and also to cause the mortgaged pro-property to be seized and sold, unless the debt has been discharged.

The defendants rely principally on a plea of payment, or rather extinguishment of the debt claimed by novation, and a release made in consequence of the alleged novation, by the husbands of some of the plaintiffs, and by the tutors and curators of others. The first and principal question to be examined in this defence, relates to the allegations and evidence offered in support of them, to establish the novation.

The whole property adjudicated, consisted of a plantation and slaves, which appear to have been owned and held in community by the ancestor of the plaintiffs and Gerault, to whom it was adjudged. The probate sale was thus made by

the consent of the latter, who seems to have given his promissory notes for about one-half of the price of adjudication, and consented to a mortgage on the whole property, to secure payment.

Notwithstanding this assent, it is contended that the mortgage could not extend beyond the half really purchased; but it cannot be doubted, that the purchaser could legally hypothecate more property than was purchased, to secure the payment of the price of that which was bought by conventional agreement, although the tacit mortgage of the vendors could not have extended beyond the thing sold; and an agreement to this effect, appears in the *procès verbal* of the probate sale. The judgement of the court below is erroneous in being unconditional against the third possessor, who is condemned absolutely as debtor. In this respect, it must be amended.

This sale took place in 1826. In the year following, Gerault, desirous of freeing the property from the mortgage, attempted to substitute for the notes already by him given, others made by him and his wife for the sums expressed in the first, payable to the order of James Gerault, who endorsed them. To secure the payment of these last mentioned notes, Francis S. Gerault and his wife, executed a mortgage on an undivided sixth part of another plantation and slaves, which had been the property of the wife's father, and which she, as heir, had an interest to that amount. The notes thus given, were deposited in the hands of the parish judge of Concordia, and it is not shown that they were even in the possession of the plaintiffs; none of the written acts relating to this transaction, contain any reference to the notes or mortgage which they were intended to novate and discharge. The plaintiffs do not appear as parties to them in any shape; novation is never presumed; the intention to make it, must clearly result from the terms of the agreement, or by a full discharge of the original debt. *La. Code*, 2186. The novation contended for by the counsel of the defendants, is, that which might have taken place by the debtor contracting a new debt to his

*Novation is never presumed. The intention to make it, must result clearly from the terms of the agreement, and by a full discharge of the original debt, or by substituting a new debtor in place of the old one, with the consent of the creditor.*

creditors, substituted for the old one; but such substitution cannot take place, without the consent of the creditor.

In the instance before the court, no such consent appears to have been given, and there is no evidence that the creditors agreed to accept the new debt in discharge of the old. Under these circumstances, it could be considered in no other light than an additional security, which in the petition they abandon, and claim under the original obligation.   The defendants, however, insist on a release of the old claim made by the husbands of two of the plaintiffs, and by the tutor and curator of the others.   That husbands have a right to collect debts due to their wives, and tutors those due to minors, and consequently to give valid acquittances to the debtors, may be admitted; and as a corollary of this right to receive payment and acquit, perhaps they might legally novate and release; but to give validity to a release made in consequence of a novation, it is necessary that the first should be clearly established, or the release would be without consideration and void.   Such an act would amount to a gratuitous disposal of the property of minors, which tutors are not allowed to make. *Lou. Code.* 349.   The authority granted by the article 107 of the Code of Practice, to husbands to contest the personal and possessory actions to which their wives may be entitled, and to recover debts due to the latter, certainly does not authorize a gratuitous disposal by the husband of such debts; he could not legally release them without payment, or something equivalent.   He clearly has no power to give away the property of his wife.   The basis of the release being the assumed novation, and as in our opinion this did not legally take place, the release itself must be considered as void and without effect; and the plaintiffs have a right to pursue their claim to recover the original debt against the purchaser at the probate sale, and to require the mortgaged property to be seized in the hands of the third possessor and sold to satisfy their judgement, unless he prefers to pay the amount for which it was mortgaged, or voluntarily surrender it to be sold.

*Husbands may collect debts due to their wives, and curators and tutors to their wards, and give valid acquittances therefor; but to legally novate and release a debt, the novation must be clearly established to give validity to the release.*

The debtor and mortgagor, in his second answer, pleaded in reconvention and claimed a balance against the plaintiffs on account of money advanced for their benefit. They answer by denying the allegations in this plea, and excepting to the jurisdiction of the District Court to adjudge on the matters therein contained; the claim (if any this defendant had) is for advances made as tutor, and the settlement of his account as such was exclusively cognizable in the Court of Probates. This exception must prevail according to the article 377 of the Code of Practice, which limits demands in reconvention to courts competent to decide on the matters contained in such demands.

It is, therefore, ordered, adjudged, and decreed, that the judgement against Hunt, the third possessor, so far as it condemns him personally to pay the debt claimed by the plaintiffs, be avoided, reversed, and annulled. It is further ordered, adjudged, and decreed, that the judgement of the District Court be affirmed in all other respects, at the costs of the defendants in the court below; those of this court to be borne by the plaintiffs and appellees. It is, moreover, ordered, adjudged, and decreed, that if the defendant Hunt do not pay and discharge the judgement rendered against Gerault, the mortgagor, after ten days notice to this effect, or surrender the mortgaged property in his possession, it shall be seized and sold according to law, to satisfy said judgement.