EASTERN DIST.
*April*, 1840.

SAUL
*vs.*
NICOLET'S EXEC-
UTORS.

---

## SAUL *vs.* NICOLET'S EXECUTORS.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF NEW-ORLEANS.

The mere renewal of notes with an endorser, and making partial payments does not operate a novation, nor deprive the vendor of his privilege on the thing sold, in the hands of his vendee.

So, the renewal of notes given as evidence of an hypothecary or privileged debt, and an extension of time, is not *per se* a novation, or extinguishment of the mortgage or privilege.

Where notes for the price of bank stock are renewed, and the plaintiff's agent endorses them, gets them discounted in bank, and at maturity takes them up for his principal, they return with a subrogation to all the privileges, and the original holder can recover and enforce his privilege on the stock, against the maker, his vendee.

This is an action against the executors of the late Theodore Nicolet, for the balance due of the price of five hundred shares of Gas Light Bank stock, sold by J. A. Merle & Co., as agents of the plaintiff.

It is shown that on the 15th December, 1836, the plaintiff, through his said agent, sold to Nicolet & Co. said bank stock, and took their notes, payable at sixty and ninety days, for the price. When these notes became due, there were

EASTERN DIST.
*April,* 1840.

SAUL
*vs.*
NICOLET'S EXEC-
UTORS.

partial payments made, and they were renewed for the balance several times, with J. A. Merle & Co.'s endorsement, who, the last time of renewal, had them discounted in bank, but took them up at maturity. On getting the notes discounted, Merle & Co. remitted the proceeds to the plaintiff.

This suit is instituted in the name of the plaintiff against the executors of Nicolet, the maker of the notes, to recover the balance remaining due, for which judgment is prayed, together with the vendor's privilege on four hundred shares of *said stock,* in the hands of the executors of the deceased.

There was a general denial pleaded by the executors and attorney for absent heirs.

There was judgment for the plaintiff, and the executors appealed.

*Eustis,* for the plaintiff, contended that the original contract not having been discharged nor the party released, the privilege of the vendor remains unimpaired and in full force.

*Grima* and *Lockett,* for the defendants and appellants, insisted that the plaintiff had no privilege on the stock in the hands of the executors, for the unpaid balance of the price; because the *debt* created by giving the original notes was *novated,* and the privilege thereby extinguished.

*Eustis,* in reply, further urged that the original privilege and obligation was not affected by the incident of the delivery of the notes of the purchaser, except as to the *term.*

2. That on the non-payment of the notes at the expiration of the term, the plaintiff's rights in the obligation and privilege became entire; and the amount thereof, with the privilege, became demandable.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff claims of the estate of Nicolet a balance due upon the price of five hundred shares of bank stock, sold by his agent, J. A. Merle & Co., to Theodore Nicolet, deceased, with the privilege of vendor upon four hundred shares of the stock still remaining in possession of his executor. The

EASTERN DIST.
April, 1840.

SAUL
vs.
NICOLET'S EXEC-
UTORS.

executor and the attorney of absent heirs answer by a general denial. The plaintiff had judgment according to the prayer of his petition, and the executor appealed.

It is shown that the bank stock was sold to John A. Merle & Co., as agents of the plaintiff; that Nicolet gave four promissory notes, two at sixty and two at ninety days; that they were renewed at maturity, and afterwards partial payments were made. The notes, both original and in renewal, were made payable to the order of J. A. Merle & Co., and were endorsed by them and discounted in bank. They were finally taken up by Merle & Co.

It has been argued by the appellants that the privilege of vendor no longer exists, inasmuch as the debt due by Nicolet & Co. for the price of the stock has been novated, by the renewal of the notes with an endorser, and their transfer to the bank, if not by taking the notes of Nicolet & Co. in payment of the same. It will certainly not be contended that the taking of notes for the price, by the agent of the vendor, operated a novation. No intention to novate or to renounce the privilege of vendor, can be inferred from the mere executing of notes for the price to the agent and in his name. It only remains to inquire whether the renewal of them subsequently, and their negotiation through bank by means of the endorsement of the agents, has produced that result.

Novation is not presumed; it must result clearly from the declaration or the acts of the parties. The mere renewal of notes, given as evidence of an hypothecary or privileged debt and an extension of time, has never been held by this court as amounting *per se* to a novation, and a consequent extinguishment of the mortgage or privilege. On the contrary, in the case of Cox *vs.* Rabaud's syndic, 4 *Martin's Reports*, 11, the court said, (*arguendo*,) "the notes certainly did not extinguish the mortgage; for if either the original notes, or *any of those subsequently given for the renewal* of them, was unpaid at maturity, in the hands of the plaintiff, he might resort to his mortgage." And again: "We are of opinion that the plaintiff cannot avail himself of his mortgage, unless

*The mere renewal of notes with an endorser and making partial payments, does not operate a novation, nor deprive the vendor of his privilege on the thing sold in the hands of his vendee.*

*So, the renewal of notes given as evidence of a hypothecary or privileged debt, and an extension of time, is not, per se, a novation; or extinguishment of the mortgage or privilege.*

EASTERN DIST.
*April*, 1840.

SAUL
*vs.*
NICOLET'S EXEC-
UTORS.

he show that he still holds the original notes or either of them, or any other *clearly proven to be given for the renewal of the original.*"

The same question came again before the court in the case of Hobson et al. vs. Davidson's Syndic, which is strongly analagous to this, and the principle recognized in the case first mentioned was again sanctioned by the court and formed the basis of its judgment. It is not necessary to repeat the reasoning of the court, or to refer particularly to the authorities, especially those of Pothier and of Merlin, upon which the court relied. We still consider that case as exhibiting a correct application of the principles of law to cases like this. 8 *Martin*, 428.

But the appellant contends that the case now before the court differs essentially from the one just mentioned, and that in this case the novation clearly results from the substitution of a new creditor, to wit, the bank ; and that when the notes were discounted they became the property of the bank; that Nicolet & Co. became the debtors of the bank and not of the plaintiff, who was paid by the funds advanced by the bank.

To this it may be answered, that when the bank became proprietor of the notes as endorsee, it took them with all the privileges or mortgages by which their ultimate payment was secured ; and that when, afterwards, they were taken up by J. A. Merle & Co., they returned with a subrogation to the same privilege. They must, therefore, be regarded in the hands of Merle & Co., as if they had never been negotiated in bank. But it is objected that Merle & Co., the endorsers, were no longer to be regarded as agents of the plaintiff, but as having endorsed for the accommodation of Nicolet & Co., and, therefore, on their refunding the bank, having remitted the whole amount to Saul, the plaintiff, they alone, in their own right, could recover of the estate of Nicolet. There is nothing to show that Merle & Co. ceased to be the agents of Saul, and Saul, by instituting this action, necessarily ratifies their acts in the premises. We cannot infer from the mere circumstance of Merle & Co. having remitted the amount to Saul, that they had made the debt

their own; on the contrary, it is more probable that the agents were refunded the amount thus remitted. If the right of the plaintiff to sue had been specially contested, it may have been shown, that in point of fact, Saul never did seek to throw any loss upon his agents, by retaining the amount remitted as the proceeds of the notes given for the stock; and a reason for supposing so is, that Merle & Co. did not charge a commission for guaranty. It is true, that under the general rule, the plaintiff must show his right to recover; and if there was no other evidence than that the plaintiff had already received the amount of these notes, we should conclude that he could have no right to recover. But the evidence goes much further. It shows that Merle & Co. were the plaintiff's agents in selling the stock, and making the remittance, and the transaction furnishes no presumption that Merle & Co. intended to render themselves personally liable, or that they intended to give up, for their principal or themselves, a legal right growing out of the contract of sale, that of being paid the price out of the thing sold, so long as it remained in the hands of the vendee. The destruction or renunciation of such a right is not easily presumed; and the position of the parties before us is strikingly different. The plaintiff, whether acting for himself, or, in point of fact, for his correspondents and agents, J. A. Merle & Co., are endeavoring to avoid a loss; while the executor, acting for the other creditors of Nicolet & Co. and the absent heirs, seek to gain an advantage at the expense of the plaintiff: "*certant de lucro captando.*"

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.