FRANCOIS GILLET and others *v.* MARIE ROSE RACHAL and others.

Where a creditor of a succession receives from the administrator a note, signed by him in his representative capacity, for the amount of an account due by the succession, stating in a receipt at the foot of the account, that the note, when paid, will be in full therefor, the execution of the note will be considered as a mere acknowledgment of the claim, and a promise to pay at the maturity of the note, and not a novation of the debt. C. C. 1397 to 1400, 1407, 1408,

Novation is never presumed. The intention to make it must clearly result from the terms of the agreement—from a full discharge of the original debt, or from the substitution of a new debtor, with the consent of the creditor.

A creditor of a succession for the amount of an open account, cannot recover interest at a higher rate than five per cent a year.

The decisions that the word *executor* or *administrator*, affixed to the name of the maker of a note or draft, are mere words of description, neither adding to, nor diminishing the personal responsibility of the party using them, and that an executor or administrator has no authority to bind the estate by notes or drafts, mean only that an executor or administrator cannot, by making or endorsing a note or draft in his official capacity, bind the estate when not originally liable for the debt, but that he will thereby render himself responsible, individually, for the amount.

The doctrine that a surety is released by an extension of time granted to the principal debtor without his consent, does not apply to the case of the sureties on the official bond of an administrator, to whom an extension of time has been granted for the payment of a debt due by the succession. Nor can the forbearance of a creditor to sue, discharge the sureties of the administrator from any liability under their bond. *Per Curiam:* No one can be compelled to sue another; but the surety may sue his principal for indemnification in several cases, one of which is, when the latter is bound to discharge him within a certain time. C. C. 3026. The term fixed for the administration of executors, curators, &c., is one year, at the end of which the sureties might have compelled the administrator to render his accounts, and pay the

---

Gillet and others v. Rachal and others.

debts of the estate. Having this right of action, the sureties cannot claim to be exonorated from their obligations, because of the delay of a creditor to sue.

APPEAL from the Court of Probates of Natchitoches, *Greneaux* J.

MORPHY J. This action is brought to recover of the defendants, as sureties on the bond of J. B. Grandchamps, administrator of the estate of P. Baulos, the sum of two thousand three hundred and ninety-two dollars and seventy-four cents, with legal interest from the 3d of April, 1838. The petition avers that the said Grandchamps, as administrator of the said succession, has violated the conditions of his bond, by collecting the monies due to the estate, and appropriating the same to his own use, instead of paying therewith the debts due by the deceased, and more particularly the plaintiffs' claim against the succession for sundry goods, wares, and merchandise sold and delivered to the said Pierre Baulos, during his lifetime, amounting, with interest, to the abovementioned sum, for which the said Grandchamps, as administrator, gave the plaintiffs a note, dated the 6th of January, 1838, payable in the month of March following; and that the plaintiffs have used all legal means to obtain payment of their claim from Grandchamps, as administrator, previous to instituting this suit, but without success, on account of his insolvency. The defendants, after a general denial, set up as matters of defence, that the debt claimed of the estate of Pierre Baulos, if it ever existed, has been novated and extinguished by the note of $2392 74, received by the plaintiffs from the administrator; that the sureties are discharged by the time granted to Grandchamps; that the plaintiffs have never obtained any judgment against the succession of Baulos, for the debt which forms the basis of this action; and that, if they have obtained a judgment, they have not exhausted all legal remedies agains the administrator. There was a judgment in the lower court in favor of the defendants, and the plaintiffs appealed.

The evidence shows that, in October, 1835, Pierre Baulos died, leaving a solvent estate, of which J. B. Grandchamps was appointed administrator, and that Sylvestre Rachal and J. B. Palière Rachal became his sureties, *in solido*, on his official bond. On the 6th of January, 1838, the administrator settled for an

account due to the plaintiffs by the deceased, amounting to
$1891 50, by giving them his note, as administrator of the es-
tate of Pierre Baulos, for $2392 74, payable in all March fol-
lowing, which note included interest on the debt, at the rate of
ten per cent per annum from the opening of the succession.   In
1842, the plaintiffs brought suit against Grandchamps, as ad-
ministrator, and obtained, in February, 1843, a judgment decree-
ing him to pay to the plaintiffs, in his capacity of administrator,
the sum of $2392 74, with interest and costs, and ordering
in case he should not pay said sum out of the funds of the suc-
cession of Pierre Baulos, or show good cause to the contrary,
on notice of this judgment being served on him, that an execution
should issue against his individual property.   This judgment
having been duly notified to the administrator, a *fieri facias* was
issued accordingly, upon which the return is, that the sheriff
having called on the defendant Grandchamps, to pay the writ,
or point out property, he stated that he was unable to do either;
that the officer then called upon the attorney of the plaintiffs to
point out property of the defendant wherewith to satisfy the
writ, and that he being unable to do so, it was returned unsatis-
fied.   On this return being made, the present suit was brought
against the sureties of Grandchamps.   Their counsel contends
that by receiving Grandchamps' note, the plaintiffs novated their
debt, and substituted the personal liability of the administrator
for that of the succession of Baulos.   We are referred to arti-
cle 1408 of the Civil Code, as conclusive on this point.   It says:
" There is a novation in the debt of the deceased, when the cre-
ditor has accepted a new title from the heir, or a pledge or mort-
gage of the property of the latter; or if the creditor has grant-
ed him a term for payment, or a delay."   This article is not, in
our opinion, entitled to the weight given to it by the counsel,
nor does it seem to us to have such a direct bearing on the case
as he supposes.   It relates to the right which the Code gives to
the creditors of an estate to demand a separation of patrimony,
that is, that the property of the succession be separated from
that of the heir.   Arts. 1397, 1398, 1399, 1400.   If the creditors of
a succession treat with the heir, by taking from him his personal
obligation, by receiving from him a pledge, or a mortgage, or by

granting him a term for payment, they can no longer exercise this right of demanding a separation of patrimony. Art. 1407. In the present case, the plaintiffs treated with Grandchamps in his representative capacity alone. By giving this note, which he signed as administrator of the estate of Pierre Baulos, Grandchamps considered it, as it was no doubt considered by the plaintiffs, as a mere acknowledgment of their claim against the succession, and a promise to pay it, in March, 1838, with ten per cent interest on its amount. It is the same as if, at the foot of the account due by the deceased, the administrator had promised to pay it, with interest, at a given time. This interest, which the plaintiffs were entitled to, could not, however, exceed five per cent. Code of Practice, art. 989. The form in which he put this acknowledgment or promise to pay, operated no injury to any one interested in the succession, and was intended by neither party to create any new liability. The intention of the parties not to novate the debt, clearly appears from a receipt of the plaintiff, given at the foot of the account, when they received the note in question. It says : " Pour acquit, *sauf encaissement* d'un billet de même somme de Grandchamps, administrateur de la succession de Pierre Baulos." Novotion is never presumed. The intention to make it must clearly result from the agreement, and by a full discharge of the original debt, or by substituting a new debtor in the place of the old one, with the consent of the curator. 4 La. 483. 15 La. 246. 16 La. 274. 1 Rob. 182. 3 Rob. 418. This court has held, that " a draft given in payment of property does not operate a novation, when the receipt given therefor says, ' when paid will be in full.' " 3 La. 112. Expressions such as these, and those used in the receipt given by the plaintiffs in this case, exclude the idea of a novation, and clearly show that they continued to look to the succession of Baulos, for the payment of the debt for which they held the administrator's note, or promise to pay. We have been also referred to various decisions of this court, in which it has been held that the words *as executor*, or *as administrator*, affixed to the name of the drawer of a note or draft, are mere words of description, which neither add to nor diminish the personal responsibility of the party using them, and that

the executor or administrator has no authority to bind the estate by draft or note, &c.   5 Mart. 201.    5 Mart. N. S. 529, 662, 704.   2 La. 185.   The whole extent to which these decisions go, we understand, to be, that an executor, or other administrator, by making or endorsing a note, in that capacity, cannot thereby bind the estate, but will make himself responsible for its amount.   In the present case, it is shown that the debt for which the administrator signed this note, was due by the estate of Pierre Baulos, and that the note, by the express agreement of the parties, created no new liability, but only acknowledged that of the succession.

It is next contended that the sureties have been discharged by the granting of time to Grandchamps, the plaintiffs having taken no steps to obtain payment from him, from 1835 to 1838, and having then taken his note in January, payable in March following.   The doctrine of releasing a surety because the creditor grants time to the principal debtor without his consent, has no application, we think, to a case like the present.   The sureties on Grandchamp's bond were not responsible for any of the debts of the succession of Baulos; they did not bind themselves to pay them; their responsibility under the bond was that he would faithfully discharge the duties incumbent upon him as administrator, and well and truly pay or deliver over to those entitled by law to receive the same, all and every sum, or sums of money, or other effects, and a true account of his administration render, &c.   Had the succession turned out to be insolvent, they would not have been responsible for its debts; but they bound themselves to indemnify the creditors and heirs of the succession, in case Grandchamps failed to administer it faithfully and honestly.   As to the forbearance of the plaintiffs, from 1835 to 1838, the well settled principle of law is, that no person, against his will, can be compelled to sue another; and our Code gives the surety the right of suing the principal debtor for indemnification, in several cases, one of which is, where the debtor, or principal was bound to discharge him within a certain time.   Art. 3026.   The term fixed for the administration of executors, curators, &c., is one year.   At the end of that time defendants could themselves have compelled the administrator

to render his accounts, and pay the debts of the estate. The surety, having this right of action himself, cannot justly claim an exoneration from his obligation, as a consequence of the delay of the creditors to sue.

From the view we have taken of. the note given by Grandchamps to the plaintiffs, and of the circumstances under which it was made, we think that judgment was properly rendered upon it, although it would have been more regular to have sued upon, or produced the original account, in acknowledgement of which the note was signed by the administrator; but, independently of this judgment, the record shows that, at the suit of the tutrix of the minor children of Pierre Baulos, Grandchamps, in April, 1843, was compelled to present an account of his administration, showing a balance in favor of the heirs of Baulos, of $1,757 81, which was duly homologated. In this account the plaintiffs were set down for a sum of $1,996, that being the balance supposed to be due to them, after a payment of $795 65, which the administrator considered as made to them in 1838, but which was not imputed as credited to him until 1843. The judgment homologating this account, in which the plaintiffs were placed for the supposed balance due to them, is, in itself, a sufficient judgment; but the defendants' counsel urges that, as in this account, rendered by Grandchamps to the heirs of Baulos, he has credited himself with this balance due to the plaintiffs, the latter, who introduced this account and judgment of homologation, are concluded by the evidence, which shows that they have been paid. The account was rendered in a suit between Grandchamps and the heirs of Baulos, evidently to ascertain the balance coming to the latter, after deducting all the debts due by the estate. He credited himself with all the claims presented to him, whether paid or not; and, on examining the items, we find some mentioned as paid, while most of them merely show the account, judgment, &c., due by the estate. The credits which the administrator has thus set up against the heirs, claiming the balance of the estate after a deduction of its debts, cannot be opposed to the creditors.

It is finally contended, that the plaintiffs must fail in the present action, as they have not taken "the necessary steps to enforce payment against the principal," as required by the act of

the 16th of March, 1842; and we have been referred to articles 1055, 1056, and 1057 of the Code of Practice. These articles appear to us intended to protect administrators from executions against their individual property, when they have in their hands no funds of the estate, and to afford them an opportunity of showing the fact, by filing in court a brief statement of their situation with regard to the succession they have under administration. *Carrière et al.* v. *Meyer et al.*, 16 La. 127. In the present case, it is not pretended that Grandchamps has no funds belonging to the estate to pay its debts, as he himself acknowledged that, after deducting all the debts he had in his hands, a large balance was due to the heirs of Baulos.

The judgment obtained against the administrator, the *fieri facias*, and the return made upon it, show that the plaintiffs had exhausted all legal means of obtaining payment from him, before they resorted to the present suit. As to the credit of $795 65, which Grandchamps was entitled to for a claim he had against the plaintiffs, the record does not enable us to give it any precise date; but their counsel admits that it might take effect at any time since the 1st of April, 1838. This date we will adopt, and reduce to five per cent, instead of ten, the interest to be allowed on the original debt of the appellants.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be reversed, and that the plaintiffs have judgment, *in solido*, against J. B. P. Rachal, and the widow and heirs of Sylvestre Rachal, for the sum of $1,891 50, with legal interest from the 14th of August, 1835, subject to a credit of $795 65 as of the 1st of April, 1838, (the widow and heirs of Sylvestre Rachal to be liable for the debts of the deceased—the widow for one half of it, and the heirs each for their virile share, or portion in the other half,) with costs in both courts.

*M. Boyce*, for the appellants.

*Tuomey* and *Roysdon*, for the defendants.