## BONNABEL *v.* THE FIRST MUNICIPALITY.

*A purchaser who has paid the price can not demand a restitution of the price nor security,
even during the pendency of an action to evict; a fortiori, he cannot do either before he is
disturbed by the true owner. The right of a purchaser to have a sale rescinded under art.
2427, must be limited to those cases in which the price has not been paid.*

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
*Schmidt,* for the appellant. The jurisprudence of Rome held, that it
was not the duty of the vendor to make the purchaser owner of the thing sold,
but simply to put him in possession, and afterwards to protect him against evic-
tion. Dig. 18, 1, 28, *De contrh. empt. &c.* This doctrine was generally follow-
ed in France, until the Napoléon Code, which adopted another princple, viz:
that the true object of every sale was to render the purchaser owner of the
thing sold, and not simply to put him in possession of it. Troplong, Vente, no.
230, &c. Duranton, vol. 16, no. 176. "L'acheteur," says Duranton, "d'un
immeuble, qui peut démontrer que son vendeur lui a vendu la chose d'autrui,
a le droit de demander l'annulation du contrat &c". The principle for which
the plaintiff contends has been distinctly recognized in the case of *Kemp* v.
*Kemp,* 2 La. 242. *Pontchartrain Rail Road Company* v. *Durel,* 6 La. 484.

*Moreau* v. *Chauvin*, 8 Rob. 157. *Pepper* v. *Dunlap*, 9 Rob. 282. *Campbell* v. *Nichols*, 11 Rob. 16.

*Morel* and *Preaux*, for the appellants, contended that a restitution of the price could only be claimed in case of actual eviction. C. C. 2481. 2 Mart. N. S. 619, 466. 6 La. 543. 7 La. 46. 12 La. 30. 13 La. 257. 14 La. 559. 17 La. 303. 19 La. 235, 224. 1 Rob. 239. 3 Rob. 134, 400.

The judgment of the court was pronounced by

ROST, J. In 1838, the plaintiff and one *Cordova* bought of the defendants a town lot, for the price of $3,500. The plaintiff subsequently acquired the share of *Cordova*, and paid the whole amount of the purchase money. His petition alleges that he has since discovered that the lot purchased by him, did not, at the time of the sale, belong to the First Municipality. He prays for a recision of the sale on that ground, and that the price be refunded to him. There was judgment in favor of the defendants, and the plaintiff has appealed.

The plaintiff relies on art. 2427 of the Civil Code, which ordains that the sale of a thing belonging to another is null; and has shown from commentaries on a similar article of the Napoléon Code, that the purchaser who can prove that his vendor has sold him a thing belonging to another, has the right to ask the recision of the contract, even before he is disturbed in his possession by the true owner.

Such may be the law of France; but art. 2427 of our Code must be reconciled with the provisions of art. 2538, which are not found in the Code of France. These provisions are, that the purchaser who has paid the price, can neither demand a restitution of it, nor security even, during the pendency of the suit brought to evict him; and he cannot, *a fortiori*, do so, before any disturbance has taken place. For the purpose of giving effect to this article the right of the purchaser to have the sale rescinded under art. 2427, must be limited to those cases in which the price has not been paid.

*Judgment affirmed.*[*]

---

[*]*Schmidt*, for a re-hearing. Art. 2427 of the Code of this State being a literal transcript of the 1599th art. of the Napoléon Code, the inference is irresistible, that it was intended to have the same effect in Louisiana, which it has in France. This article was inserted in the Code Nap. for the express purpose of changing the roman law, in conformity to the spirit of the age, and the wants of a more advanced state of civilization, so as to require the vendor to transfer the property of the thing sold, and make the purchaser absolute owner and master; and for this purpose it declared null the sale of a thing not belonging to the vendor. Vide, Motifs et Discours du Code Civil, vol. pp. 593, 608. The theory of the roman law, as we have seen, did not require that the vendor should render the purchaser owner of the thing sold; he was only bound to deliver and maintain him in possession of the object sold. Africanus says, "Hactenus tenetur (venditor) ut rem emptori habere liceat, non etiam ut ejus fàciat." Dig. de act. empt. vend. l. 30, § 1. Vico and other writers had observed the singularity of this provision, and have pointed out the strange anomaly between the contract of exchange and of sale, the former being null if the parties did not respectively render each other owners of the things exchanged, while the latter only required delivery and defence in case of eviction. The reason of this difference, as Troplong very properly observes, cannot be explained logically; but historically it appears that the contract of sale was, what in the roman law is called *contractus nominatus*, and stamped with the arbitrary form of its remote origin, while the contract of exchange was *contractus innominatus*, and governed exclusively by the broad rules of natural law and plain common sense. Troplong, Vente, no. 4. The roman law recognized another contract, in which the vendor was bound to make his vendee owner of the thing sold, which was an innominate contract, and gave rise to the action *ob rem dati, re non secuta*, (Dig. de Condict, causa data l. 16); but this was not strictly speaking, a contract of sale. The roman law of sale with all its consequences had been adopted in France, and Dumoulin and Pothier both lay down the doctrine, that the vendor, after delivering the thing, is only bound to guaranty the purchaser against eviction. It was this doctrine, which art. 1599 of the Code Nap. was intended to change.

What are the obligations of the vendor by the laws of this State? Art. 2414 of the Civil Code defines the contract of sale to be, "an agreement by which one gives a thing

for a price in current money, and the other gives the price in order to have the thing itself." On comparing this with the 1582d article of the french Code, which defines the contract of sale, the two articles will be found to differ very materially. The french Code says, "La vente est une convention par laquelle l'un s'oblige à livrer une chose et l'autre à la payer." Our Code declares, that the price is paid to have the thing itself; the french Code only requires the delivery of the thing sold. It will be readily admitted that, in order to have the thing itself, one must be owner of it, and that, while the law of France leaves it doubtful, whether the possession of the thing sold was the only thing contemplated, our law shows it was the ownership which the purchaser expected to acquire. Art. 1914 of our Code declares, "the rule that the obligation to deliver a determinate object is perfect by the mere consent of the parties, and that the obligee is the owner from the time of such contract, is without exception as respects immovables, &c."

Art. 1963, provides that " contracts considered with respect to their operation on property, either purport to transfer, or to give some determinate right upon it. A sale or exchange, is an example of the first; a pledge or mortgage of the second of these species of contracts."

Here we have : 1st. Art. 2414, which says, that the purchaser pays the price to have the thing itself. 2d. Art. 1914, which declares that the obligee becomes the owner of the immovable, when he has consented to its delivery. 3d. Art. 1963, which provides that the purport of a sale is to transfer the property.

From the foregoing propositions in connection with the provisions of the 2413th art. of the Civil Code, which enacts that the contract of sale, as to all matters not specially provided for in tit. 7, b. 3 of the Civil Code, is subject "to the general rules established for conventional obligations, we infer: 1st. That if the parties contemplated the sale and transfer of ownership of the lot bought by *Bonnabel*. and if he is not in reality made the owner, because said lot belongs to a different person than his vendor, then there is a failure of the cause or consideration of the contract, which can have no effect. C. C. art. 1887. That the motive of *Bonnabel* in buying was to become owner, cannot be doubted; but if his expectations in this respect have not been realized, there is no contract. Art. 1890. 2d. That the quality of the greatest value to the purchaser of real estate is unquestionably the ownership, and, if that was not acquired, he was laboring under an error which renders the contract void. C. C. arts. 1835, 1838, 1839, 1818, 1819, 1321. 3d. If ownership be of the essence of the contract, as we think it is, then this want of an essential condition to the fulfilment of the sale, vitiates and avoids it. C. C. art. 1758, § 6. 4th. All courts are bound, in the interpretation of agreements, to give effect to the intentions of the parties, (C. C. art. 1949, § 2); and if such intent is not carried into effect, the contract ceases to subsist.

Thus it appears from the general rules applicable to all conventional obligations, in which category the contract of sale is included, that the want of ownership is : 1st. A want of consideration of the contract: 2d. That it effects the essence of the contract: 3d. Violates the intentions of the vendee : each of which defects authorizes the plaintiff to claim the nullity of the contract. There are also other provisions of our Code, which authorize the same inference. Thus art. 2283 says, "that which has been paid by virtue of a void title, is also considered as not due," and, *a fortiori*, that which was paid without any title.

To permit, under such circumstances, the 2538th article to control and change the spirit and obvious intention of so many and,such important enactments of the Code seems to be to carry the doctrine of the implied revocation of laws much too far, especially when, as in this instance, it is practicable to reconcile the provisions of arts. 2427 and 2538. Art. 2538 is found in that part of the Code, which treats of the obligations of the buyer, and reads as follows : "If the purchaser has paid before the disturbance of his possession, he can neither demand a restitution of the price, nor security during the suit." This art. must be construed in reference to the subject matter of which it treats. Arts. 2535, 2536, and 2537 which precede the one we are considering, show the rights of the buyer, when he is either disquieted in his possession by a mortgage creditor, &c., or has just reason to fear he will be disquieted, and they provide, that he is not bound to pay the price unless he be quieted in his possession, or the vendor give security, except in cases where the buyer was apprised before the sale of the danger of the eviction. They further provide that the vendor may compel the vendee to deposit the price, when he is unable to give security, and that the vendee may make such deposit of his own accord to relieve himself from the payment of interest; then follows art. 2538, which declares that neither restitution nor security can be required of the vendor who has received the price, during the pendency of the suit.

The state of facts to which art. 2538 applies, appears very different from that contemplated by article 2427. The latter intended, when the purchaser was able to show affirmatively that the vendor had sold him the property of another, to enable him to annul the sale, and take back the price. The former declares that, when the vendee is disturbed in his possession by a suit claiming a mortgage or some other right, he cannot compel his vendor, during the pendency of such suit, either to restore the price or give security. As the vendee, in such suit would necessarily call his vendor in warranty, and the decision of the cause would determine whether he had sold what did not belong to

BONNABEL<br>v.<br>FIRST<br>MUNICIPALITY:

BOSNABEL
*v.*
FIRST
MUNICIPALITY.

him, and the vendor in such event would be decreed to restore the price, this disposition does not appear unreasonable.

Judge Porter, in the case of *Kemp* v. *Kemp*, 2 La. p. 242, thinks it questionable whether, after payment of the price, the purchaser can maintain an action of nullity. His reasoning is exactly similar to that of the court in this case. He, however, does nothing more than intimate a doubt, because the decision of the point was not necessary to the cause, and his opinion is a mere *obiter dictum.*

In the case of the *Pontchartrain Rail Road Company* v. *Durel*, 6 La. 484, Judge Martin says, that the Code declares the sale of another person's property null, and that in such event the party "need not wait for eviction or suit." In the case of *Moreau* v. *Chauvin*, 8 Rob. 157, the court carry the principle still further, and decide that the purchaser may rescind the sale of a slave when the vendor fails to release an encumbrance existing on the property. In that case the court put the right of recision on the ground that "the contract is a synallagamatic one, in which the resolutory condition is always implied in case either of the parties fails to comply with his engagements," p. 160. So in this case if the vendee be not owner, the vendor has not complied with his engagement, and we are entitled to a recision of the sale. In the case of *Pepper* v. *Dunlap*, 9 Rob. 282, it was held by the court that, where vendors of real estate are shown to have had no title, a regular eviction by judicial authority is not required, to entitle the purchaser, who has paid part of the price, to relief. Ibid. p. 289, in fine. In the case of *Beaumon* v. *Thomas*, 1 An. p. 284, this court has sanctioned the principle of 2427, La. Code, that the sale of the thing of another is null. So in the case of *Trudeau* v. *McVicar*, 1 An. p. 428, this court held, that where a bond was given for property of which the purchaser was in undisputed possession, it was null, as being without consideration, if the title to the property was not conveyed, and that no disturbance was necessary.

*Rehearing refused.*