Thomas and another, Executors, v. Clement and others.

Defendants sold to plaintiff a tract of land, at the rate of ten dollars an *arpent.* The act of sale provided that, " within a reasonable time from the day of sale, a survey and plan of said tract shall be made by a duly commissioned surveyor, which plan shall be recorded and made part of this act," and that in case of plaintiff's eviction from any part of the land, or of its being found by the survey to contain less than the quantity for which he paid, defendants shall refund to the purchaser at the rate of ten dollars for every *arpent* deficient. No survey was made under this stipulation; but by a new survey, made by the United States in consequence of alleged errors in the first, the lines of the tract sold to plaintiff were altered, and a large portion of the land declared to belong to the United States. Plaintiff knew of this second survey and location, which was approved by the Commissioner of the Land Office more than ten years after defendants' sale to him, but he made no opposition to the proceedings, nor notified his vendors. After the land had been declared public, plaintiff purchased it from the United States at $1 25 per acre, and immediately caused a survey to be made to ascertain the deficiency in the quantity purchased from defendants. In an action by plaintiff against defendants, claiming to be refunded at the rate of ten dollars an *arpent* for the deficiency: *Held,* that the stipulation to refund to the purchaser at that rate, must be confined to any deficiency ascertained by a survey made "within a reasonable time from the day of the sale ;" that it was never contemplated to apply to an eviction occurring at a distant period—ten or eleven years after ; that for such an eviction the vendee must be compensated for the damage actually sustained ; and that the price paid by him to the United States for the land from which he was so evicted, is the measure of such damages.

Thomas and another, Executors, v. Clement and others.

To constitute an eviction it is not necessary that the purchaser should be actually dispossessed. It may take place where he continues to hold the property, if under a different title from that transferred to him by his vendor.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*L. Janan*, for the appellants.

*R. H. Chinn*, *L. C. Duncan*, *Wharton* and *A. Hennen*, for the defendants.

GARLAND, J. The plaintiffs claim the sum of two thousand five hundred and forty-five dollars, which they say the defendants owe, in consequence of a certain tract of land sold by the latter to their testator falling short of the quantity stated in the sale. It appears that, on the 5th of February, 1829, the defendants, by an authentic act, sold to M. P. Flint and one Jesse P. Brown, a " tract of land situated in the parish of Rapides, on the bayou Bœuf, measuring about sixteen *arpents* front, by forty *arpents* in depth, containing six hundred and forty superficial *arpents*, more or less," for the price of $6,400, being at the rate of ten dollars per *arpent*. It was further agreed, "that, within a reasonable time from the day of sale, a survey and plan of said described tract of land, shall be made by a duly commissioned surveyor, which plan shall be recorded, and made a part of the present act;" and, in case the said tract of land shall be found to contain more than six hundred and forty *arprents*, then the said purchasers agree to pay the defendants for such excess, at the rate of ten dollars per superficial *arpent ;* and in case they (said purchasers) are evicted of any portion of said land, or, if it shall be found by the survey to contain less than six hundred and forty superficial *arpents*, then, for the quantity so wanting, the defendants agree to pay at the rate of ten dollars the *arpent*, without any recourse on them for improvements. M. P. Flint, at a subsequent period, acquired all the rights of Brown, by purchase from him. This tract of land is a part of a much larger tract in that section of country, confirmed to Miller and Fulton by the United States, generally known as the Indian claims on bayou Bœuf. In the year 1830, these claims were located by Kenneth McCrummen, a deputy surveyor of the United States, and his plat and operations were approved, in February, 1831, by the principal deputy surveyor

for the district.    By this survey, the Miller and Fulton claim had a depth of forty *arpents*, at the place where the tract of land sold by the defendants to Flint and Brown was situated ; and they had their full quantity of six hundred and forty *arpents*. Some time after the approval of McCrummen's survey, some persons being dissatisfied with it, raised objections ; and we find that, in November, 1835, the Commissioner of the General Land Office, stated in a letter addressed to the Surveyor General in this State, that it could not be recognised, and that a new survey and location must be made.    This was made in the years 1834, 1835 and 1836, by the Messrs. Phelps, also United States surveyors.    It the latter year a plat of their operations was submitted to the Commissioner of the General Land Office, who, being satisfied with it, the same was finally approved by the Surveyor General, in the year 1839; and, a short time thereafter, a patent was issued by the President of the United States for the land, conformably to this survey, being about ten years and two months after the sale from the defendants to the plaintiff's testator.    By this survey, at the place where the land sold was situated, the claim of Miller and Fulton had a depth of much less than forty *arpents*.    The plaintiffs had a survey made in 1840, more than eleven years after the purchase by their testator, by Phelps, the parish surveyor, by which it appears there are but 385 50-100 superficial *arpents* in the tract, extending the side lines to the back line last fixed by the United States, being a deficiency of two hundred and fifty-four and a half *arpents*, for which the sum of ten dollars per *arpent* is demanded.

When the location and survey of the Miller and Fulton claims were made and approved, in 1831, neither M. P. Flint, nor his associate, Brown, took any steps to have a survey made, to ascertain if there were 640 *arpents* or more in the tract purchased by them.    Had they had a survey made then, at least six hundred and forty *arpents* would-have been found within the limits of the land purchased by Henry Clement, and sold by his heirs to Flint and Brown.    When dissatisfaction was expressed with McCrummen's survey, and steps were taken to set it aside, no objection was made by Flint and Brown ; they took no measures to arrest the Messrs. Phelps in making a new location and sur-

vey ; nor did they notify the defendants of any of those proceedings, nor join with .others who were interested in opposing them, although they were well calculated to affect their title and possession to the land purchased. It does not appear that M. P. Flint, in his lifetime, nor the plaintiffs since his death, ever took any steps to put the defendants on their guard, or to inform them of the probability of an eviction for any portion of the land. They were silent until the survey of the Messrs. Phelps was approved in 1839, whereby it appears that the lines of the Miller and Fulton claim were changed and contracted, and the land formerly within them declared to be public. Then the plaintiffs, still keeping the defendants in ignorance of the eviction, went to the Land Office at Opelousas, and purchased from the United States the same land at one dollar and twenty five cents per acre ; and afterwards, without notice to the defendants, more than eleven years after the original contract, they have a survey made, *ex parte*, showing a deficiency of 254 50-100 *arpents*, and claim of the defendants, at the rate of ten dollars per *arpent*, for it, when they had themselves bought it at $1 25 per acre.

The Commercial Court gave a judgment in favor of the plaintiffs for $287 50, the amount they had to pay the United States for the land ; and they have appealed.

It is clear that if Flint and Brown, at any time within five years after their contract with the defendants, had had the land surveyed, that the quantity sold would have been found within the limits of the Miller and Fulton claim, as that was always, until the survey made by Phelps, represented and held as having a depth of forty *arpents*. There is no deficiency in the front pretended. And it is very probable that, had the plaintiffs given the defendants notice of the proceedings of the surveying department, which resulted in what they call an eviction, they would have taken some measures to prevent it; or would, at least, after the eviction, have endeavored to purchase the land of which the plaintiffs had been evicted, and, in that way, have secured to them the quantity originally sold. To prevent this, the plaintiffs did not give any notice at all, until, by their own acts, they had made it impossible for the defendants to give them the quantity stipulated to be sold.

The counsel for the plaintiffs contends, that his clients have been evicted, in consequence of the alterations made in the location and survey of the Indian claims, and of the issuing of a patent by the United States, in conformity with that survey. That the questions of boundary and location were under the control of the officers of the United States, until the patent was issued, and could be altered by them. This, to a certain extent, is true, and their action and decisions in some cases, will, no doubt, amount to an eviction; but it does not always follow that, in consequence of such an eviction, the vendor or warrantor, must necessarily pay a high rate of damages. He says there has been an eviction in the sense of the terms of the contract, and that the measure of damages has been fixed by it. We think the counsel does not state the contract in the sense intended by the parties. It does not say that if, at any future period, however remote, the plaintiffs should be evicted by a superior title, or a want of one in the vendors, the defendants are to pay them at the rate of ten dollars per *arpent ;* but it stipulates that, if, within in a reasonable period, the plaintiffs shall, by a survey legally made, ascertain that there is not six hundred and forty *arpents* in the tract, then a proportionable part of the price to be paid shall be returned; but this does not apply to an eviction that may occur at a distant period, which is covered by the general warranty, and is to be compensated by such damages as may have been sustained. When there is a special clause as to warranty, it must be understood and executed in the sense the parties intended. In this case, we do not think that the terms used, warrant a belief, that if, at any future time, the plaintiffs, or their testator, should be evicted, that a sum of ten dollars per acre was, under all circumstances, to be paid.

The counsel for the defendants contend that there has been no eviction at all, and that judicial action was necessary to effect it. Article 2476 of the Code tells us, that eviction is the loss suffered by the buyer, occasioned by the superior rights or claims of a third person ; and it is not necessary that the purchaser should be actually dispossessed, to constitute an eviction. It may take place, where he continues to hold the property, if under a different title from that transferred to him by his ven-

dor. 1 Robinson 362. Pothier, Traité de Vente, no. 96. Trop-
long, Vente, no. 415. And in such a case, the vendee may be
entitled to recover. But we cannot believe, that when the par-
ties agreed that a survey should be made, within a reasonable
time, by the plaintiffs' testator, and a deficiency in the quantity
sold (if any) ascertained, they considered ten or eleven years
a reasonable period, or that they intended that such survey
should be made at any indefinite epoch, most advantageous to
the plaintiffs, or their testator. Besides this, the survey pre-
sented is not made and recorded in the manner agreed on. We
are, therefore, of opinion, that the inferior court did not err in
deciding that the plaintiffs are not entitled to recover the sum
of $2,545 50.

We are of opinion that the Commercial Court, in decreeing
that the plaintiffs should recover of the defendants the sum paid
to the United States for the two hundred and fifty four and
50-100 *arpents,* did substantial justice between the parties. The
plaintiffs have all the land they are entitled to ; and it is just that
upon the defendants' warranty, they should repay whatever sum
it was necessary to quiet the title sold by them.

It is ordered and decreed that the judgment be affirmed, with
costs.