and complete copy of the record existing in the civil district court.

So reading it, in .connection with the law and the duties of the clerk, there is no presumption that the judge of the trial court acted without evidence, or sufficient evidence. Succession of Kemp, 9 La. Ann. 190.

The case we are dealing with is not that of an appellee seeking to dismiss an appeal, but of an appellant seeking to reverse a judgment rendered by the district court upon an assumed presumption that the judgment was rendered without any evidence to support it. The party intending to appeal on such a pretension should, in support of that position, obtain from the district judge a statement as to what the real situation was on that score (Code Prac. arts. 602, 603), and not rest upon a presumption drawn from an unauthorized certificate of the clerk of the civil district court. All jurisprudence tends to the maintaining of the judgments of court. An appellant has to make a very, strong showing to enable him to have even a standing in court. Appeals are constantly dismissed. Hennen, p. 71, Nos. 15, 23; Id. p. 79, No. 12.

All articles of the Code of Practice must be construed together.

We find no ground for reversing the judgment appealed from, and it is hereby affirmed.

---

(42 South. 273.)

Nos. 15,864, 15,941.

BONVILLAIN v. BODENHEIMER et al.

(Jan. 29, 1906. On Rehearing, Oct. 16, 1906.)

1. VENDOR AND PURCHASER—ACTION BY VENDEE—RESTITUTION OF PRICE.

The petition of the buyer, who alleges the purchase of real estate, the payment of the price, and actual possession of the property purchased, and which further alleges a superior outstanding title, but does not allege dispossession by judicial proceeding or a pending suit to evict, discloses no cause of action, and is premature as to the demand for restitution of price, and exceptions to that effect should be maintained, and the suit dismissed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 969, 970.]

2. ACTIONS—JOINDER OF CAUSES.

Where a cause of action for restitution of price is otherwise disclosed, there is no objection to uniting with it a demand for the correction of an error in the description of the property. The law abhors an unnecessary multiplicity of litigation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 548.]

On Rehearing.

3. VENDOR AND PURCHASER—SALE—FAILURE OF TITLE—RECOVERY OF PRICE PAID.

The sale of a thing belonging to another person is null. Civ. Code, art. 2452 (2427) ; Code Napoleon, art. 1599. In such case the purchaser incurs no obligation to pay the price, and may sue to annul the sale and recover the price paid at any time, though he may not have been actually evicted or disturbed in his possession by the true owner. Jurisprudence reviewed, and the case of Bonnabel v. Municipality, 3 La. Ann. 699, overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 5, 969, 970.]

4. SAME—PARTIAL EVICTION.

In cases of partial eviction, the relative value at the time of the sale of the part from which the purchaser has been evicted, if shown by the evidence, should be considered. Civ. Code, art. 2514. Equality of value can be presumed only in cases where there is no proof of relative value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 966, 1016, 1017.]

5. REFORMATION OF INSTRUMENTS—MISTAKE IN DEED—PARTIES.

An alleged latent misdescription in a deed forming a link in a chain of title cannot be corrected, where the vendor in such conveyance has not been made a party to the suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Reformation of Instruments, § 123.]

Monroe and Nicholls, JJ., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by A. A. Bonvillain against Philip Bodenheimer and the People's Bank of New Orleans. Judgment for plaintiff, and defendants appeal. Amended and affirmed.

Emile Joseph Méral and Beattie & Beattie, for appellant People's Bank. D. Caffery &

Son and Richardson & Soulé, for appellants E. & A. Prevost. Philip H. Mentz and Foster, Milling, Godclaux & Sanders, for appellee.

## Statement.

MONROE, J. The petition in this case alleges that on January 5, 1898, the defendant, Bodenheimer, sold to the plaintiff, with warranty of title and with subrogation of warranty against the People's Bank, "a certain sugar plantation known as 'Coteau Plantation,' in the parish of St. Mary," declared in the act of sale to consist of certain described tracts of land, and that said plantation had upon the same day been acquired by the vendor from the People's Bank, by means of an act of sale containing the same description; that in both of said acts certain of the lands intended to be conveyed are erroneously described as being in township 13 S., range 8 E., and the tract last mentioned therein is described as being in township 13 S., range 7 E., whereas all of said lands are in township 14 S., range 8 E., and township 14 S., range 7 E., and that, when said sales were made, the president of said bank exhibited a map showing them as thus located, the description as contained in said acts being a clerical error; that as soon as said acts were passed plaintiff took actual possession of said lands and cultivated said plantation to the knowledge of the vendors; that said last-described tract, which contains 483 acres, is a cypress swamp near, but not contiguous, to the rest of said lands, and more valuable than they; that in the latter part of 1903 plaintiff discovered that defendants had never owned said tract, but that it had been patented by the United States to the state of Louisiana, and sold by the state to E. Bouny, for F. Cornay, and on November 21, 1903, had been conveyed by the widow and heirs of Cornay to the Albert Hanson Lumber Company, Limited; that plaintiff notified his vendor and the People's Bank of this discovery; and that they, not being able to

establish title in themselves or in him, are liable in solido as warrantors in the sum of $15,040.62, as the value (averaged upon the basis of the whole price paid by him) of said 483 acres, together with interest on said amount. To this petition Bodenheimer excepted on the ground that it discloses no right or cause of action, that the action is premature, that the allegations are vague, and that there is a misjoinder of parties, which exceptions were overruled. Reserving the benefit thereof, he then answered, admitting the sale to plaintiff of the lands described in the act sued on, alleging that he bought the same from the People's Bank and that the title is good, and further alleging that he is informed that said title was examined by plaintiff's attorney, and that if there is any error of description plaintiff was informed of the same and can claim nothing by reason thereof. He further alleges that he and his authors, and his vendee, have been in actual, open, peaceable possession, in good faith, under titles translative of property, for more than 10 years, and he pleads the prescription of 10 years. And he further alleges that, if his right to insist upon such plea be lost, it is through the fault of the plaintiff, who, alleging his actual possession since the date of his purchase, acknowledges that he has no title. He denies that the land in question is to be valued as stated in the petition, calls his vendor in warranty, prays for judgment, etc.

The bank filed exceptions similar to those filed by Bodenheimer, and, they being overruled, reserved its right and answers that it acquired the property, as described in the act sued on, at a sale made by the sheriff September 19, 1896, in the matter of People's Bank v. Prevost, being a foreclosure proceeding on notes given by E. & A. Prevost to L. C. David, in part payment of the purchase price of, and secured by mortgage and vendor's lien on, said property, pursuant to an act of sale from said David to said Pre-

vosts of date January 22, 1894. It alleges possession in itself and its authors for more than 50 years, and in itself and its vendees (including the plaintiff, by his own admission) up to the date of the filing of the suit, unless such possession has been wrongfully surrendered by plaintiff, and it pleads the prescription of 10 years and other prescriptions. Further answering, the bank avers that, if there be any defect in plaintiff's title, it was known to plaintiff, through his attorney and agent, before his purchase, and that he can now claim nothing by reason thereof, and that, if such defect exists, which is denied, the same arises from an error committed by the notary, which was known to the plaintiff and unknown to respondent, in describing the tract referred to in the petition, instead of describing another tract, which adjoins and forms part of the plantation sold to plaintiff, and which respondent is willing to transfer to plaintiff when plaintiff transfers to it title to and possession of the tract described in the petition. The bank then calls the Prevosts in warranty, and prays for judgment, etc. The Prevosts, after excepting and reserving their rights, allege that the bank, in acquiring from their vendor, David, and in suing on, the notes given by them, assumed David's obligation as warrantor of the title to the property for the purchase price of which said notes were given, and, further answering, they adopt the answer of the defendants, in so far as the same may not be inconsistent with the special defense set up by them.

After a trial on the merits there was judgment in the district court in favor of the plaintiff as prayed for, and against the warrantors, successively, and the parties so cast have appealed.

### Opinion.

This is an action in warranty, to which the defendants opposed, in limine, exceptions of no right or cause of action, prematurity of action, vagueness of allegation, and misjoinder of parties. The two grounds of exception last mentioned are without merit, are not insisted upon, and need not be further considered. The exception of no right or cause of action, in so far as it is leveled at plaintiff's attempt, in one and the same suit, to correct what he alleges to be an error of description as to the land purchased by him, and to enforce the warranty upon the basis of the description as corrected, is also without merit. It can hardly be denied that, if the act of sale by which he acquired describes one tract of land when it was the intention of the parties that it should describe another, the intention may be shown, and the contract enforced in accordance therewith; and nothing would be gained, save a multiplicity of litigation, which the law abhors, by requiring two suits, instead of one, for the accomplishment of that end. In so far as this exception is leveled at the attempt of the plaintiff to recover the price paid, in the absence of sufficient allegations as to disturbance of his possession, it may be considered in connection with the exception of prematurity of action; both exceptions resting upon practically the same basis, to wit, that a purchaser who has paid before the alleged disturbance of his possession has no standing in court to demand the restitution of the price until he has been actually evicted by judicial decree from the property purchased, or at least until suit has been brought to evict him.

The Code of Practice treats the obligation of and the action in warranty as created and provided exclusively for the benefit of one who has been actually sued upon the claim warranted against.

Thus:

"Art. 378. The obligation which one contracts to defend another in some action which may be instituted against him is termed warranty.

"Art. 379. Warranty may be of two kinds, real or personal. Real warranty is that which arises in real, or hypothecary, actions, as when

a purchaser is sued in eviction of an immovable property which has been sold to him. * * *"

"Art. 388. The defendant, though he has not called his warrantor to defend the suit brought against him, does not lose, on that account, his action in warranty."

The Civil Code imposes upon the seller the obligation of warranting the buyer against the latter's "eviction" of the thing sold, and defines "eviction" as (article 2500):

"The loss suffered by the buyer of the totality of the thing sold, or of a part thereof, occasioned by the right or claim of a third person."

This definition throws no light on the subject of the manner in which the loss referred to may be inflicted or ascertained; and, turning to the dictionaries, we find:

"Eviction. Dispossession, ejection, ouster. Originally it seems confined to dispossession by judgment of law. In more modern use, it may embrace dispossession by paramount right, or claim of such right." Abbott's Law Dictionary.

"Eviction. (1) Dispossession by judicial sentence; the recovery of lands and tenements from another's possession by due course of law. (2) An involuntary loss of possession, or inability to get promised possession, by reason of the hostile assertion of an irresistible title." Cent. Dict.

"Eviction. The act or process of evicting, or state of being evicted; the recovery of lands, tenements, etc., from another's possession by due course of law; dispossession by paramount title; ejectment; ouster." Webster's International Dict.

Returning to the Civil Code, we find:

"Art. 2506. When there is a promise of warranty, or, when no stipulation was made on that subject, if the buyer be evicted, he has the right to claim against the seller: 1. The restitution of the price. * * *"

And, as the question still remains, when is the buyer evicted? we turn to other provisions, as follows:

"Art. 2557. If the buyer is disquieted in his possession, or has just reason to fear that he shall be disquieted, by an action of mortgage, or by another claim, he may suspend the payment of the price until the seller has restored him to quiet possession, or caused the disturbance to cease, unless the seller prefer to give security. There is an exception to this rule, when the buyer has been informed, before the sale, of the danger of eviction.

"Art. 2558. In the case mentioned in the preceding article, the seller who cannot receive the price, from being unable to give security, may compel the buyer to deposit the price, subject to the order of court, *to await the decision of the suit.*" (Italics by the court.)

These articles provide only for the case of a buyer who has not yet paid, and (when considered in connection with the provisions of the Code of Practice) suggest the idea that the disturbance referred to in article 2557 means the institution of a suit against him.

The provision which follows, and which concerns the buyer who has paid, is more specific, to wit:

"Art. 2560. If the purchaser has paid before the disturbance of his possession, he can neither demand a restitution of the price nor security, *during the suit.*" (Italics by the court.)

This article was considered by our predecessors in this court in a case in which it appeared that the plaintiff had paid to the defendant the price of a lot of ground, and subsequently brought suit to rescind the sale and obtain restitution, on the ground that the lot did not, when sold, belong to the vendor, and it was said by Judge Rost:

"The plaintiff relies on article 2427 [now 2453] of the Civil Code, which ordains that the sale of a thing belonging to another is null, and has shown, from commentaries on a similar article of the Code Napoleon, that the purchaser who can prove that his vendor has sold him a thing belonging to another has the right to ask the rescission of the contract, even before he is disturbed in his possession by the true owner. Such may be the law of France, but article 2427 of our Code must be reconciled with the provisions of article 2538 [now 2560] which are not found in the Code of France. These provisions are that the purchaser, who has paid the price, can neither demand a restitution of it, nor security even, during the pendency of the suit brought to evict him, and he cannot, a fortiori, do so before any disturbance has taken place. For the purpose of giving effect to this article, the right of the purchaser to have the sale rescinded, under article 2427, must be limited to those cases in which the price has not been paid." Bonnabel v. First Municipality, 3 La. Ann. 699.

In the case at bar the plaintiff alleges:

"That on the 5th day of January, 1898, by an authentic act, * * * Philip Bodenheimer

* * * sold to your petitioner a plantation, known as 'Coteau Plantation'; * * * that in said authentic act said plantation was declared to consist of certain tracts of land, described in detail in the document marked 'A,' hereto annexed and made part hereof, the same being a copy of the descriptions of said tracts of land in said authentic acts. * * * He avers that on the same day, and for the same price, and by authentic act, * * * the said Bodenheimer acquired identically the same lands from the People's Bank; * * * the description of said lands being the same in both the said acts. * * * Your petitioner avers that as soon as the said acts were passed he went into actual possession of said lands, cultivated said Coteau plantation, raising crops of sugar cane and corn thereon, either personally or through tenants and other persons holding under him, all to the knowledge of said vendors. He avers that said last-described tract [being the tract here in question], which contains 483 acres, is a cypress swamp, near, but not contiguous to, the rest of said lands; that it is very valuable, and is worth more, per acre, than the average value per acre as resulting from' the price paid for all the lands described in said act of sale; that very lately, in the latter part of the year 1903, he discovered that his vendor, Philip Bodenheimer, and the said People's Bank, never had any title to said last-described tract, * * * and that he acquired no title from them thereto; that he made diligent inquiry and research to discover a title thereto in said vendors, and therefore in himself; that he found, as is the fact, that said tract of swamp land passed from the United States to the state of Louisiana, and from the latter to Emile Bouny, who acquired the same for Florian Cornay, who has since died, and whose widow and heirs, on November 21, 1903, sold the same * * * to the Albert Hanson Lumber Company, Limited. * * * He avers that. as soon as he made this discovery, he announced the same to his said vendor, and to the president and other officers of the People's Bank, * * * in order that they might make an effort to discover or establish a title in themselves, * * * and therefore in your petitioner; that said bank * * * renewed, though unsuccessfully, the effort to establish a title in themselves, which had passed to said Bodenheimer and your petitioner, but that said Bank, said Bodenheimer, and your petitioner never at any time had title to said 483 acres, said title being now in the said Albert Hanson Lumber Company, Limited, having passed to that corporation as herein already stated."

The learned counsel for the plaintiff and the learned judge a quo are of opinion that there is nothing in the foregoing which amounts to an allegation that the plaintiff ever went into actual possession of the tract concerning which this suit is brought;

117 LA.—26

but, as that tract is mentioned in the petition, and is described in the document annexed thereto, just as the other lands are mentioned and described, and as the plaintiff alleges in specific language that "he went into actual possession of said lands," referring to the lands so mentioned and described, of which the Coteau plantation purchased by him is said to consist, we are unable to follow the reasoning by which that conclusion is reached. Upon the other hand, there is no allegation that the plaintiff's possession has ever been disturbed, save by the discovery of an adverse title, which he avers is superior to his own, but which, for aught that appears in the petition, has never been asserted by the holder; and there is no offer by the plaintiff to restore to the defendants the possession which he thus acknowledges to have been acquired by him under the title sued on.

It may be conceded that the law cited is inapplicable to the case of an adjudicatee at a public sale, who, discovering the defect in his vendor's title before complying with his bid, refuses to accept the same (Ponch. R. R. Co. v. Durel, 6 La. 484), and that it is inapplicable to the case of a buyer, who has paid the price, but whom the seller fails to put in possession of the property. In fact, the law by its terms applies only to buyers whose possession has been disturbed.

It may also be conceded that the law in question is inapplicable to the case of a buyer in possession,. who by inheritance or otherwise acquires a title superior to that acquired from his vendor, since he could not be expected to bring suit against himself. Landry v. Gamet, 1 Rob. 362; Thomas et al. v. Clement et al., 11 Rob. 397; Boyer v. Amet, Wife, etc., 41 La. Ann. 721, 6 South. 734; Robbins v. Martin, Jr., et al., 43 La. Ann. 488, 9 South. 108.

It may further be conceded that it has been held in a few cases (as where such title appears to be vested in the government, and

the title of the possessor cannot be perfected by prescription) that the existence of an outstanding adverse title may sufficiently disquiet the possession of the buyer, who has not paid, to authorize the withholding of the price or the demand for security. Pepper et al. v. Dunlap, 9 Rob. 283; Hall v. Nevill, 3 La. Ann. 326; McDonald v. Vaughan, 14 La. Ann. 716; Robbins v. Martin, Jr., et al., 43 La. Ann. 489, 9 South. 108.

But the case at bar does not fall within either of these classes, since, according to the allegations of his petition, the plaintiff accepted title and took actual possession of the property more than six years before the institution of this suit, has acquired no better title by inheritance or otherwise since then, has long ago paid the purchase price, and might have acquired, if he had not already acquired, a perfect title by prescription. He can, therefore, neither demand restitution of the price so paid, nor security, until he shall have been evicted by judicial proceedings, or at least until suit shall have been brought against him for that purpose.

In Bessy v. Pintado, 3 La. 488 (a case which arose under the Code of 1808), it was held that the refusal of the United States government to confirm a Spanish grant, upon which the plaintiff's title rested, did not amount to an eviction, and the court (referring to the plaintiff, who was suing for a rescission of the sale and for damages) said:

"At all events, while he remains in possession, he cannot be said to be evicted, and it is eviction, and not the right in others to evict, which can furnish ground to maintain this action."

In Hopkins v. Van Wickle, 2 La. Ann. 144, it was said:

"As long as the purchaser, who has paid the price, is not finally evicted, the only right which the law gives him is that of calling his vendor in warranty, when the case occurs."

And this latter we understand to be the rule which results from construing article 2560, Civ. Code, with articles 378 et seq. of the Code of Practice—a rule which has frequently been applied. Thus, in Rightor v. Kohn et al., 16 La. 501, the plaintiff sued on notes given in part payment of the purchase price of a tract of land known as the "Houmas Grant," and it was urged, by way of defense, that the United States government had actually sold a portion of the tract. This court said:

"This we believe to be true, but it does not follow that those sales are necessarily legal, nor is it shown that the defendants have been disturbed by any of the purchasers. It has long been settled that a vendee cannot refuse payment of the price on the ground that other persons have titles to the land sold to him, but have not disturbed him."

In Rousseau et al. v. Tete, 6 Rob. 471, the defendant, being sued for the price of property adjudicated to him at a succession sale, set up the nullity of his title, as resulting from the fact that the interest of certain minors had not been legally disposed of, and prayed that the sale be rescinded, but the court said:

"It is true that, in the case of Pontchartrain Railroad Company v. Durel, 6 La. 484, this court held that, when the vendor sells property at public auction without title to a portion of it, the vendee to whom the adjudication is made cannot be required to complete the sale and accept security, as the buyer is entitled to have all and every part of what he bought; but this decision was based on the ground that article 2535 [now 2557] of the Civil Code, which only authorizes the vendee, fearful of eviction to withhold the price until he receives security, applies to the buyer in possession, who has accepted the sale, and not to one who discovers, before he accepts a deed or possession, that the vendor has sold him what belongs to another. But where, as in this case, the purchaser has been in possession for more than two years, under a title which, however defective, he thought proper to accept, and under which he may never be disturbed, he has, in our opinion, no claim to a rescission, and can only ask to be protected or secured against a possible eviction at a future time."

And so, in the earlier case of Wrinkle v. Tyler, 3 Mart. (N. S.) 112, the defendant, being sued for the price, set up failure of consideration by reason of adverse titles; but the court, through Martin, J., said:

"No suit has been commenced against him. We do not know that the person in whom these adverse titles are vested will ever disturb him."

Other authorities, sustaining the propositions stated, as to buyers who have paid and those who have not paid, are as follows: Denis v. Clague's Syndics, 7 Mart. (N. S.) 93; Murray v. Bacon, 7 Mart. (N. S.) 271; Kemp v. Kemp et al., 2 La. 240; Wallace & Co. v. Harty & Jones, 17 La. 25; Barton's Ex'x v. Hempkin, 19 La. 510; McCulloch v. Weaver, 14 La. Ann. 33; Matta v. Henderson, 14 La. Ann. 473; Dupleix v. Deblieux, 26 La. Ann. 218; Bayley, Ex'r v. Denny, 26 La. Ann. 255; Williams et al. v. Fuller, 27 La. Ann. 634.

It is said, by the counsel for the plaintiff, that upon the trial on the merits the defendants allowed it to be proved that the plaintiff did not take actual possession of the property in question. But we do not find this to have been the case. The defendants reserved their rights with respects to their exceptions, which had been tried and overruled, and we find no testimony in the record, purporting to have been offered by the plaintiff, to contradict his judicial admission upon the subject of his possession; nor, in fact, do we find any testimony which, whatever may have been the purpose for which it was offered, is successful in the accomplishment of that result. We therefore hold the plaintiff to his averment that he took actual possession of the property more than six years before he filed this suit, and we conclude that, if he has since been dispossessed, the dispossession was voluntary, and was not the involuntary dispossession to which the lexicographer refers when, in defining "eviction," he says:

"(2) An involuntary loss of possession, or inability to get a promised possession, by reason of the hostile assertion of an irresistible title."

For these reasons we are of opinion that the exceptions now under consideration should have been maintained, and the suit dismissed. In conclusion, we think it proper to say that, whilst the view which we take hardly demanded an examination of the testimony adduced upon the merits, we have, nevertheless, made such examination with care, and are thereby enabled to concur with the judge a quo that the relation of the leading counsel for the plaintiff to this litigation, and to the transactions out of which it has arisen, is not, in our opinion, open to criticism, whether from a moral or an ethical point of view; his course in the matter having been entirely fair to all parties concerned.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed. It is further adjudged and decreed that the exceptions of no right or cause of action disclosed, and of prematurity of action, filed on behalf of defendants, be now maintained, and that this suit be accordingly dismissed, at the cost of plaintiff in both courts.

## On Rehearing—Exceptions.

LAND, J. On the first hearing of this cause we sustained the exception of no cause of action filed by the defendants. This exception necessarily admits the truth of the allegations of fact disclosed by the petition, and more especially that the bank and Bodenheimer never had any title to the tract in dispute, and therefore had no ownership to transfer to the plaintiff, and, further, that there is a paramount outstanding legal title in the Hanson Lumber Company, derived through mesne conveyances from the United States. These allegations disclose the sale by the bank and by Bodenheimer of the property of another, against whose claim of title they can urge no legal defenses whatever. Practically the reference of the question of title to the courts in a suit to be brought by the plaintiff against the true owner, or vice versa, would be a vain and useless thing.

On the original hearing we followed the dictum, announced in Bonnabel v. First Municipality, 3 La. Ann. 699, that a purchaser who has paid the price can neither demand a restitution of it nor security, even prior to judicial eviction. In that case the prior jurisprudence of the same court on the same subject-matter was not discussed, and it was admitted that the law of France was different. The court held that the question was settled by article 2538 of the Code of 1825, which reads as follows:

"If the purchaser has paid before the disturbance of his possession, he can neither demand a restitution of the price nor security during the suit."

After citing the article, the court said:

"And he cannot, a fortiori, do so before any disturbance has taken place."

No attempt was made to reconcile this conclusion with article 2427 of the same Code, declaring, "The sale of a thing belonging to another person is null," and giving to the purchaser a right of action for damages.

The same court had in Hall v. Nevill, 3 La. Ann. 326, affirmed the doctrine of Pepper v. Dunlap, 9 Rob. 289, to the effect that a regular eviction by judicial authority is not required where there is an outstanding title in the United States. The reason assigned for this ruling in that case was that "the sale of another's property is null and void," and not merely that the sovereign had not been divested of title. Whether the perfect outstanding title to the property be in the United States, or in the state, or in an individual, can make no difference in principle, as the legal effect is the same quoad the purchaser, who acquires no title from his vendor.

In Robbins v. Martin, 43 La. Ann. 488, 9 South. 108, the court affirmed McDonald v. Vaughan, 14 La. Ann. 727, to the effect that actual eviction is unnecessary "if a perfect title exists in some third person, whereby it is rendered legally certain that his vendor had no title." In Robbins v. Martin, supra. the outstanding title was "in other persons," shown by the record to be individuals. In other cases the principle is recognized that actual eviction is not necessary where there is an entire failure or want of title shown on the part of the vendor. Laurans v. Garnier, 10 Rob. 425; Thomas v. Clement, 11 Rob. 401; De St. Rome v. City, 34 La. Ann. 1202. It is well established that there may be an eviction where the purchaser continues to hold the property, if it be under a title which is not that transferred to him by his vendor, as if he should inherit the property or should acquire it by purchase from the true owner. Landry v. Gamet, 1 Rob. 363. In such cases the eviction results from the entire want of title in the vendor or the failure of the title conveyed, and not from the mere purchase or acquisition of the title of the true owner. In Watkins v. Gibbins, 10 La. Ann. 142, it was held that the purchase of an outstanding title by the vendee would not avail him to defeat the payment of the purchase price, unless he showed an entire failure of the title derived from the vendor. In Butler v. Watts, 13 La. Ann. 390, the vendor's pre-emption certificate was canceled by the Land Department subsequent to his alienation of the property, and the court held that such a cancellation was in itself equivalent to an actual eviction, citing Hall v. Nevill, 3 La. Ann. 327. A vendor who never had any title is in no better position than a vendor whose pretended title has been canceled.

The Bonnabel Case was practically overruled in Robbins v. Martin, supra, a comparatively recent decision of this court, and is inconsistent with the cases which hold that the entire failure of the title derived from one's vendor is equivalent to an eviction. A sale by a vendor without title vests.

no right of ownership in the vendee, and is null as a sale of a thing belonging to another. Civ. Code, art. 2452 (2427). If such a sale be not absolutely void, it is voidable at the option of the vendee at any time before or after its completion. Articles 2557, 2558, 2559, and 2560 refer to disturbances of possession by actions or claims of third persons, and the last declares that:

"If the purchaser has paid before the disturbance of his possession, he can neither demand a restitution of the price nor security during the suit."

By its terms article 2560 presupposes a pending suit by a third person against the purchaser in possession. In such case the law makes it the duty of the defendant to notify his vendor, who may be called in warranty. Such a suit involves the issue of title to the property, affords the purchaser an opportunity to call in his vendor and warrantor, and constitutes lis pendens as to the question of ownership. In such a case it is a reasonable requirement that the purchaser shall not "during the suit" institute a separate action against his vendor for the restitution of the price. The purchaser's right to call his vendor in warranty affords complete relief in the same action.

Where there is no such suit pending, article 2560 has no application and the purchaser may avail himself of the right of direct action against his vendor conferred by article 2452 (2427).

As we have seen, our state jurisprudence recognizes this right of action, although the purchaser has not been judicially evicted.

Article 2452 (2427) of our Civil Code is a copy of article 1599 of the Code Napoleon. The declaration that "the sale of a thing belonging to another person is null" converted sales into contracts translative of property.

Under the Roman law and the ancient French law the sale of the property of another person was valid, the vendor simply obliging himself to maintain the purchaser in peaceable possession as owner. Baudry-Lacantinerie, Droit Civil, De La Vente (2d Ed.) § 116. These writers say that in such a case the nullity is relative and solely in the interest of the purchaser, who may avail himself of the right either by exception or by suit, according to circumstances—"par voie d'action, si, ayant déjà payé son prix, il veut en obtenir la restitution." Id. § 119. In regard to the true owner, such a sale, whether valid or not, is "res inter alios acta," and cannot in any manner affect his rights. Id. § 125. The purchaser can maintain this action of nullity without waiting for the true owner to evict him. Id. § 347.

Laurent says:

"La vente de la chose d'autrui etant nulle, l'acheteur a le droit d'en demander la nullité, quand même il ne serait pas troublé." Tome 24, p. 8.

See, also, Marcadé, vol. 6, p. 205.

Duranton, as quoted in defendant's brief, reads as follows:

"L'acheteur d'un immeuble, qui peut démontrer que son vendeur lui a vendu la chose d'autrui, a le droit de demander l'annulation de contrat avant même d'être troublé dans sa jouissance par le veritable maitre de l'immeuble."

The sale being vicious ab initio, the right of the purchaser to demand its nullity springs at once into existence. The law annexes no conditions to the exercise of this right. The purchaser, having received nothing for the price paid, has the right to demand its restitution. The vendor, not having complied with his obligation to transfer the ownership, has no equity to retain the price.

The subsequent articles of the Code already cited treat of disturbances of the purchaser by suits or claims of third persons, and lay down certain rules governing the rights of vendor and purchaser in such cases.

The provisions of these articles cannot be applied to the hypothesis of article 2452, without holding that the sale of the property

of another though prohibited, is valid to the extent of binding the purchaser to take and retain possession until evicted by a judgment of the court at the suit of the true owner. This construction is wholly inadmissible. Article 2452 deals with one hypothesis, and article 2560 with another. The former provides that certain sales shall be null. The latter declares what shall be the legal effect of the disturbance of the purchaser by a suit, and provides that such disturbance shall not authorize the purchaser, who has paid, to demand of his vendors a restitution of the price, nor even security "during the suit." Article 2557 gives the purchaser, who had not paid the price, the right to · suspend its payment until quieted in his possession or until the disturbance is made to cease, unless the seller prefer to give security. It is evident that, under the terms of article 2557, the disturbance or just fear of disturbance per se confers the right on the purchaser to suspend payment unless security is given. Under article 2560 the disturbance per se caused by suit confers no right on the purchaser, who has paid the price, either to restitution or security. In both cases the law is dealing with a threatened eviction, and, regardless of what may be the final result of the litigation, lays down certain rules to govern the rights of purchaser and vendor "during the suit."

Pothier and other French commentators go to the extent of holding that the purchaser may surrender possession to the true owner, if the title of the latter is legally certain. Pothier maintains that the powerlessness of the purchaser to resist the true owner is tantamount to an eviction. We therefore conclude that the exception of no cause of action was properly overruled.

Defendants also filed separate pleas of prematurity, which were overruled. We assume that this plea, following, as it does, an exception of no cause of action, is bottomed on the failure of the petition to allege an actual eviction. The plea filed by defendant Bodenheimer so reads. The plea filed by the bank does not state wherein the suit was premature, and there is no averment of want of tender of possession prior to the filing of the suit. These pleas were properly overruled.

## On the Merits.

The land in dispute is a certain tract of 483 acres of swamp land in township 14, near, but not contiguous to, the Coteau plantation, which was purchased in 1898 by plaintiff from Philip Bodenheimer. The petition alleges that said tract was purchased and intended to be conveyed, but by clerical error was described as being located in township 13.

The defendant Bodenheimer in his answer admitted the sale as shown by the deed alleged, but denied that there was any clerical error in the description of any of the tracts described in the instrument.

The bank, as defendant and warrantor, admitted the sale to Bodenheimer as shown by deed, but averred that there were clerical errors in the instrument, other than the one alleged in the petition, by which were included certain tracts of land not intended to be sold, and that the lands really intended to be sold were certain subdivisions of sections described in the answer. The answers of both defendants are in effect that the particular tract of swamp land described in the petition was not sold or intended to be sold.

The alleged misdescription as to the number of the township in which the swamp land in dispute is located is conclusively shown by the evidence. The description as given in the deed locates the tract in another parish, and does not accord with the map delivered to the purchaser at the time. The sales of the bank to Bodenheimer and of the

latter to plaintiff were made on the same day, and contain the same misdescription.

The evidence shows beyond question that the Albert Hanson Lumber Company holds the paramount title, derived by mesne conveyances from the state of Louisiana, and by the state from the United States, under the swamp land grants of 1849-50.

The bank purchased at sheriff's sale made in 1896 in foreclosure proceedings against Ernest and Arthur Prevost, who in January, 1894, purchased from one Leon C. David, who is not shown to have held the land in dispute under any title whatever.

All of the deeds described the property sold, first, as the "Coteau Plantation," containing 900 acres more or less, made up of six different tracts of land; and, secondly, a tract of swamp land, containing 483 acres. The last tract is detached from the plantation, being two or more miles distant, and as a matter of fact was virgin forest, which had never been in actual possession of any person.

There is no evidence in the record to show actual possession of either of the two tracts by David or the Prevosts. There is no evidence to show that the detached tract of swamp land was ever considered or used as an appurtenant to the plantation. Moreover, this latter tract was not described in any of the deeds, which consequently were not translative of the property in dispute quoad third persons. Sentell v. Randolph, 52 La. Ann. 52, 26 South. 797. As between David and the Prevosts, this misdescription cannot be corrected in this proceeding, as he is not a party to this suit. We therefore see no possible basis for the contention that the defendants have acquired title by the prescription of 10 years, and are of opinion that the plaintiff is entitled to recover for the partial eviction by him sustained.

The district judge rendered judgment in favor of plaintiff for $15,040.62 on the basis of the average price per acre as shown by the act of sale. Much evidence was adduced pro and con as to the relative value of the tract in dispute at the date of the sale to plaintiff in 1898, but such evidence was not considered by the trial judge. The question before us is whether as a matter of law the rule adopted by the court a qua is correct.

Article 2514 of the Civil Code declares:

"If in case of eviction from a part of the thing, the sale is not cancelled, the value of the part from which he is evicted is to be reimbursed according to its estimation proportionately to the total price of the sale."

Under the very terms of this law the value of the part must be estimated, and the recovery had of the proportion which such estimated value bears to the total price. If there be no evidence on the subject, the court may assume that the relative value of the part is not greater than an average of the whole. Quillin v. Yair, 10 La. Ann. 260. The iron-bound rule of average price per acre, or other measurement, contended for by defendants, would, in all cases where the parts differed in value by reason of improvements or other causes, work rank injustice.

The cases of Burrows v. Peirce, 6 La. Ann. 297, and Quillin v. Yair, 10 La. Ann. 260, are not applicable. These cases simply hold that a purchaser of land who has been evicted is not entitled to recover from his warrantor, as damages, the increased value of the land at the time of eviction. The circumstance that in both cases the court allowed the average of the total price, in the absence of all contention and evidence that the relative value of the part was greater, is without significance. In Wood Manufacturing & Creosoting Company v. Davenport, 50 La. Ann. 510, 23 South. 448, the court, in the absence of averment and satisfactory evidence as to the relative value of a portion of a city lot, rendered judgment on the basis of the average of the price. In Robbins v. Martin, 43

La. Ann. 488, 9 South. 108, judgment was rendered based on the estimative value of the portion of land from which plaintiff had been evicted, proportionally to the total price as shown by the evidence.

We think it too plain for argument that the basis of apportionment should be the relative value of the part from which the purchaser has been evicted, when shown by the evidence.

The question of fact involved is, what was the relative value of the tract of swamp land at the date of the sale in 1898? What could it have been sold for in the market? We are of opinion that the decided preponderance of the evidence entitled to consideration fixes its market value somewhere between $5 and $10 per acre. The circumstance that this tract has enormously enhanced in value since 1898 cut no figure. Neither do speculative opinions as to the value of the timber or firewood on the tract to the owner of the plantation. The fact that no owner of the "Coteau Plantation" ever used any timber or firewood from the tract in question shows that its value was purely prospective or speculative.

The land in 1898 was worth what it would bring in the open market. We conclude that an allowance of $7.50 per acre would be liberal in the light of the evidence.

The defendant bank called Ernest Prevost and Arthur Prevost in warranty and obtained judgment over against them jointly; and they have prosecuted a separate appeal. The appeals, however, have been consolidated.

In their pleadings both the bank and the Prevosts deny that the tract in dispute was sold or intended to be sold. There is neither allegation nor proof that David intended to sell this particular land to the Prevosts.

As between the defendants and the plaintiff, the erroneous description is shown by the fact that this tract appears on a map, produced at the time, indicating the tracts intended to be sold. David is no party to the suit, and is entitled to be heard before his deed to the Prevosts can be corrected. The error is not patent on the face of the act of sale.

If the defendant bank, as transferee, represents David, the vendor of the Prevosts, it is bound by David's obligation of warranty. If David is not represented by the bank, he is a necessary party to a suit to correct or reform the deed executed by him. We therefore are of opinion that the bank should have been nonsuited on its demand in warranty.

It is therefore adjudged and decreed that the judgment appealed from be amended as follows, to wit: By reducing the respective amounts awarded to the plaintiff and to Philip Bodenheimer on his demand in warranty from $15,040.62 to $3,622.50. And it is further ordered and decreed that the judgment in favor of the People's Savings, Trust & Banking Company against Ernest Prevost and Arthur Prevost be annulled, avoided, and reversed, and it is now ordered that the demand in warranty of said company be dismissed, at its costs, as in case of nonsuit; and it is finally ordered and decreed that said judgment, as thus amended and reversed in part, be affirmed, plaintiff to pay costs of appeal taken by the defendants, and the banking company to pay the costs of the appeal taken by the Prevosts.

MONROE, J., dissents, for the reasons assigned in the original opinion. NICHOLLS, J., also dissents.

The court declined to entertain the application for a second rehearing in these two cases.