O’NIELL, C. J.
 

 This is a suit for a royalty of 6 cents per cubic yard, of 3,000 pounds,
 
 *491
 
 on 37,500 yards of gravel taken by tbe defendant from what is called the Melder gravel pit, in Rapides parish. The plaintiff’s demand was rejected, and he has appealed from the decision.
 

 He sold to one A. D. Alderson, on the 4th of October, 1917, the land from which the gravel was afterwards taken by the police jury for Rapides parish. As a part of the consideration for the sale, Alderson was obliged to remove the gravel from the pit within three years, and pay Powell a royalty of 3 cents per cubic yard, of 3,000 pounds of gravel. By a written contract between Alderson and Powell, dated the 29th of December, 1920, the time for removing the gravel was extended two years, and the royalty to be paid by Alderson to Powell was increased from 3 cents per cubic yard weighing 3,000 pounds to 4 cents per cubic yard weighing 2,000 pounds; and, on .the same day, Alderson assigned his contract to the Tioga Gravel Company of which he was vice-president and manager. On the 1st of February, 1921, the Tioga Gravel' Company sold the land, with other lands and leases, to the police jury, and the latter assumed “the obligations of royalty of the vendor under the several deeds and leases held by it and transferred by this act of sale.” •
 

 It is not disputed that the defendant excavated and removed 37,500 cubic yards, of 3,000 pounds per yard, of gravel from the land. It appears that the standard weight of a cubic yard of gravel, according to the custom of the trade, is 3,000 pounds, and that, when gravel is handled in large quantities, as it was in this case it is sold by weight, not measure. In the contract between the plaintiff and Alderson, the royalty was to be paid according to railroad weights. Therefore, when the royalty to be paid by Alderson was increased from 3 cents per cubic yard weighing 3,000 pounds to 4 cents per cubic yard weighing 2,000 pounds, the increase was really from 3 to 6 cents per standard cubic yard, weighing 3,000 pounds.
 

 The defendant pleaded that the plaintiff did not have a valid title to convey to Aider-son, and that, being apprehensive of the weakness of the title, defendant acquired also the title of one B. E. Smith by an act of exchange, and is therefore under no obligation to pay plaintiff the royalty which Aider-son agreed to pay.
 

 The plaintiff pleads, as an estoppel, that the defendant cannot dispute the title of defendant’s lessor, acquired from plaintiff, or repudiate the obligation assumed by defendant to pay the royalty of 6 cents per standard cubic yard of gravel. The plea is founded upon the doctrine that a lessee, holding possession in virtue of the contract of lease, cannot dispute the title of his lessor. But the doctrine is not applicable to an ordinary mining lease, which, in that respect, is more like a sale than a lease. Leonard v. Garrett, 128 La. 541, 54 So. 987; Sanders v. Tremont Lumber Co., 143 La. 181, 78 So. 439; Wilson v. Pierson, 143 La. 287, 78 So. 561; Nabors Oil & Gas Co. v. Louisana Oil Refining Corporation, 151 La. 361, 91 So. 765. In the latter case the court said:
 

 “The doctrine that an ofdinary lessee cannot dispute the title of his lessor during the time of the lease has no application to a contract in the form of an oil and gas lease by which a person acquires mineral rights, it being more like a sale than an ordinary lease, and the lessee, on learning that the lessor had lost his rights by prescription before the original lease was acquired, was not precluded from acquiring a lease from the owners of the land.”
 

 The main question, if not the only question in the .case, is whether the plaintiff had a valid title to convey to A. D. Alderson. The land which plaintiff sold to Alderson is described as lots C and D on a plat of a survey made by R. W. Bringhurst, parish survey- or, in October, 1917, and is the southwestern half of the S. W. % of N. E. % of sec. 34,
 
 *493
 
 in T. 2 N., R. 3 W.; being that part of the quarter of the quarter section that is on the southwest side of a diagonal line drawn from a point on the west boundary of the quarter of the quarter section and 2.37 chains from its north end, in a direction S. 53° E., to a point on the east boundary of the quarter of the quarter section, 2.37 chains from its south end. That is the tract of land from which the gravel was taken by the defendant, and the title to which is in dispute.
 

 The plaintiff bought the whole S. W. % of N. E. % of Sec. 34 from J. T. Hart on the 9th of October, 1883, and the deed was promptly recorded. Plaintiff sold to James H. Cook, on the 15th of October, 1883, all of the land which he had bought from Hart except the land now in dispute. Hart held a state patent for the S. W. % of N. E. % of Sec. 34, T. 2 N., R. 3 W., containing 39.97 acres, dated the 27th of October, 1882, and duly recorded in the state land office; ' a copy of which patent is in the record. Plaintiff’s chain of title therefore was perfect if the state got title from the United States.
 

 The defendant relies upon the testimony of one Marion E. Gordy, who says that he made a homestead entry on the 39.97 acres, being the S. W.
 
 Yi
 
 of N. E. % of Sec. 34, some time between the years 1878 and 1885, and that he received a patent from the government, but neglected to record it, and was unable to produce or find it. There is verbal testimony in the record — but no written deed — to show that Marion E. Gordy sold lot C to E. T. Bruce, in 1882; that Bruce sold the lot to a Mr. James; and that James sold it to Mil-burn Teekel. There is a deed from Milburn Teekel to E. V. Melder for 26 acres of land' which may be identified as the land in dispute, dated the 7th of November, 1898; a deed from F. V. Melder to P. A. Melder, for the same 26 acres of land, dated the 5th of November, 1893; a deed from P. A. Melder to B. E. Smith for an undivided half interest in a tract said to contain about 20 acres, which may be identified as the land in dispute, dated the 17th of September, 1917; three deeds from the three daughters of P. A. Melder, heirs of his deceased wife, each selling an undivided sixth .interest in the same tract of about 20 acres, to B. E. Smith, two of the deeds being dated the 18th of September and the other the 3d of October, 1917; and an act of exchange between B. E. Smith and the police jury of Rapides parish, dated the 16th of April, 1921, by which the police jury acquired both lots, G and D, together with adjacent lands in the N. E. % of Sec. 34.
 

 The record contains also a deed from Gordy to B. E. Smith, for lot D, dated the 19th of September, 1917, and duly recorded.
 

 The record contains also a copy of a judgment of the district court, dated the 19th of July, 1918, in favor of Marion E. Gordy and against the widow and heirs of John D. Philips, ordering them to retrocede to Gordy certain lands in the N. E. !4 of Sec. 34, including a tract described as “14 acres in the western part of the southwest quarter of the northeast quarter” of the section, which may be identified as the lot D in dispute. It appears, though there is no other record of the fact except the suit of Gordy against the widow and heirs of Philips, that Gordy sold a tract of land including lot D to John D. Philips many years ago, on terms of credit, and his suit was to rescind the sale for nonpayment of the price. The widow and heirs of Philips appealed from the decision in the case, and, pending their appeal, they sold their right, title and interest in the land to the Tioga Gravel Company, on the 28th of September, 1917. The deed contains a description of a tract of 14 acres, in the west half of the S. W. % of N. E. % of Sec. 34, which, according to the courses and distances given, is, beyond all doubt, the lot in dispute. The title thus conveyed, however, was
 
 *495
 
 only a litigious right, which in our judgment, did not affect the title which Gordy had conveyed to B. E. Smith on the l&fih of September, 1917. That is a matter of importance in this respect, that the defendant contends that, in acquiring title from the Tioga Gravel Company, defendant acquired the title which the latter had acquired from the widow and heirs of John D. Philips, and defendant relies upon that title rather than upon the title .which the Tioga Gravel Company had acquired from the plaintiff through A. .0. Alderson. In the deed from the widow and heirs of Philips to the Tioga Gravel .Company, one of the considerations was that the gravel company should pay the vendors a royalty of 2% cents per cubic yard of 3,000 pounds for the gravel to be dug and removed from the land.
 

 The record contains also, a copy of a lease from P. A. Melder and the children of his deceased wife to the Tioga Gravel Company, dated the 20th of November, 1915, of a tract of 26 acres which apparently includes the lot C, and possibly both lots in dispute. The royalty to be paid by the gravel company to the lessors was 2% cents per cubic yard of 3,000 pounds of gravel. The defendant claims also under that lease in opposition to the title acquired by the Tioga Gravel Company from the plaintiff, through Alderson.
 

 The result of the statement which we have made is that a correct decision of the question as to who has title to lots C and 0 depends upon whether the United States conveyed and approved the S. W. % of N. E. % of Sec. 34 to the state of Louisiana, or conveyed it to Marion F. Gordy, under the homestead entry which he says he made. A certified abstract from the records of the land office would settle that question, and there is no reason why the evidence should he not available. It is not satisfactory to decide a question of title to real estate on verbal testimony — even where such evidence is admissible — if it is apparent that written evidence which would be decisive of the case is available.
 

 The testimony to the effect that Marion F. Gordy occupied or cultivated the west part of lot 0 many years ago, and that P. A. Melder afterwards occupied a part, if not all, of the land in dispute, and that others claiming under Gordy occupied parts of the land, all of which evidence was offered by defendant in support of the plea of prescription of 10 and 30 years, is not so convincing as to justify our deciding the case on the plea of prescription instead of remanding it for proof as to how the United States government disposed of the land.
 

 We have concluded to avail ourselves of the right, under article 906 of the Code of Practice, to remand the case for the introduction of better and more decisive proof as to whether the state of Louisiana or Marion F. Gordy acquired the S. W. % of N. E. % of Sec. 34, T. 2 N., R. 3 W., from the United States. For that purpose we shall set aside the judgment appealed from, in order that the ease may be reopened for the admission of any evidence that may be deemed admissible and relevant to the issues. We express no opinion as to whether the judgment to be rendered by the district court should nof be the same as that which was heretofore rendered if no further evidence should be offered in the case.
 

 The judgment is set aside and the case is ordered remanded to the district court for further proceedings consistent with the opinion and instructions given.