TALIAFERRO, Judge.
On October 11, 1949, Miss Adelaide Keller, resident of the City of Shreveport, Louisiana, executed unto defendant, A. K. • Boosahda, a mineral lease to the following described lots of- land in Caddo Parish, Louisiana, to-wit: One acre lot 276 and five acre lots 331, 332, 351, 352 and 371 of the Subdivision of the South Three Quarters (S %) of Section Four (4), Township Twenty (20), Range Fifteen (15), as per plat recorded in Map Book 50, page 97 of the Records of Caddo Parish.
The price of the lease was One Hundred ($100.00) Dollars. The lease contains the following stipulation, viz: “As an additional consideration lessee obligates himself to commence the drilling of a well within ninety (90) days from date hereof and to continue drilling to the woodbine sand unless oil or gas be found in paying quantities at a lesser depth. Failure to drill said well renders this lease null and void as to both parties.” . -
On October 17th defendant assigned the lease to plaintiffs, J. E. Carroll and John F. Ryan, for One Thousand ($1,-000.00) Dollars, cash.
No attempt was made to procure production on either lot, and on February 3, 1950, this suit was filed wherein plaintiffs seek to have the assignment to them rescinded and to recover the price paid therefor, on the ground that the title to all of the lots, save No. 276, was bad; ■ that is, they were not owned by Miss Keller when she executed the lease to defendant.
To support the contention that Miss Keller’s title was radically defective to ail of the lots, save No. 276, it is alleged that in 1910 all of said lots were owned by S. L. Herold and J. A. Thigpen, and on July 1st of that year they conveyed them, except No. 276, to F. A. O’Neal, James Reid and Arthur W. Wilks, as per deed recorded in Conveyance Book 59, page 780, of the records of Caddo Parish; but that on December 8, 1916, Herold and Thigpen conveyed the same lots to Isaac Muslow, who, on May 15, 1920, conveyed them to Muslow Oil Corporation:
That for the year 1924 all five of said lots were assessed to O’Neal, Reid and Wilks, but two of them, Nos. 351 and 352, were also for that year assessed to the Muslow Oil Corporation, who timely paid taxes under that assessment; that notwithstanding this prior payment of taxes, *838 all of the' lots were advertised for sale for delinquent taxes under said assessment- to Ó’Neal, et al, and were on May 30, 1925, adjudicated to Miss Carrie Keller, a femme sole:
That the succession of Miss Carrie Keller was opened in the District Court for Caddo Parish, being No. 46,934, and Miss Adelaide Keller, as her sole heir, was placed in possession of an undivided one-third (%) interest only in Lots 331, 332, 351, 352 and 371; that the deceased acquired and held title to these lots to the extent of an undivided two-thirds (%) interest for the use and benefit of J. H. Thigpen and Eugene Harding as per counter letter attached to the succession proceedings:
That on July 15, 1945, the Muslow Oil Corporation granted an oil and gas lease on all five of said lots and on many other lots in the same section, unto C. J. Brown, who has drilled several wells thereunder (but none on said five lots) in search of oil and/or gas; and that the Arkansas Fuel Oil Company has executed and has had recorded a declaration of taking from the Muslow Oil Corporation of oil produced from the lots here involved and other property, pursuant to Act 64 of 1934.
Plaintiffs further alleged that the title they acquired from the defendant was so defective and clouded as to make it impossible for them to drill wells for oil and gas on the lots, they having only until January 14, 1950 in which to do so.
They also allege that they bought the lease as a whole and would not have done so had they known that the title to Lot 276 only was valid in Miss Keller; “that it would not have been a paying operation for them to move onto this property to drill a one acre lot, and this fact defendant well knew”; that, to defendant’s knowledge, plaintiffs are engaged in the business of exploring for and producing oil and gas in Caddo Parish, and only bought the lease for that purpose.
We have found the record facts to be as alleged by the plaintiffs.
Defendant excepted to the petitioner as not disclosing either a cause or a right of action. These were overruled with written reasons. They are not specifically urged here. The basis for the exceptions is- argued in brief on the merits and will be discussed hereinafter.
Defendant denied categorically each and every allegation of the petition, and called Miss Adelaide Keller in warranty and prayed, should plaintiffs prevail, for judgment against her for One Hundred ($100.-00) Dollars and costs. She was cited as warrantor but did not answer. Judgment by default was rendered against her.
There was judgment for plaintiff as by him prayed, and also for defendant on the call in warranty. Defendant appealed.
Lot 276, title to which is not in question, is situated approximately three-fourths (%) of a mile west of the other five lots,.
Because of the defects in the tax sale, herein mentioned, Miss Carrie Keller’s title to Lots 351 and 352 was invalid. And, on account of the counter letter above mentioned, her ownership in and to Lots 331, 332 and 371 was reduced to one-third (%)• This fact is reflected from the inventory in her succession. This small interest is clouded with adverse record title of the Muslow Oil Corporation whose ownership is traced to the same source as that held by O’Neal, Reid and Wilks.
In this Court the defendant pitches his defense upon the proposition that since plaintiff’s rights as lessee have not been disturbed, nor have they been evicted from the lots, nor threatened to be, they are without right to cause rescission of the transfer of lease to them and recover the price of it.
Considerable parol evidence having to do with what was said and done by the parties prior to, at the time of and subsequent to the closing of the assignment of the lease to plaintiffs, was admitted over objection of defendant’s counsel. Such testimony clearly was inadmissible. Article 2276 of the Civil Code is controlling. It reads: “Neither shall parol evi *839 dence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.”
There is no allegation in the petition that warrants admission of this character of testimony. The measure of liability of each party to a written act of transfer, must be determined from the four corners of the instrument plus such evidence, written and parol, as may be relevant to and admissible under the issues raised by the pleadings.
Plaintiffs’ action is primarily based upon Article 2452 of the Civil Code, which simply states that the sale of a thing owned by another is null. Such a sale, of course, superinduces certain rights, remedies and responsibilities. Some early cases in the jurisprudence of the state limited the right of the vendee, in such a case, to proceed against the vendor only after he had been sued in revendication or had been in some other manner evicted from the property in question. However, in Bonvillain v. Bodenheimer et al., 117 La. 793, 42 So. 273, on rehearing, the Supreme Court reviewed the whole field of pertinent jurisprudence and flatly held: “The sale of a thing belonging to another person is null. Civ.Code, art. 2452 (2427); Code Napoleon, art. 1599. In such case the purchaser incurs no obligation to pay the price, and may sue to annul the sale and recover the price paid at any time, though he may not have been actually evicted or disturbed in his possession by the true owner. Jurisprudence reviewed, and the case of Bonnabel v. [First] Municipality, 3 La.Ann. 699, overuled.”
The same question has been before the Courts several times since the Bonvillain case. Lastly, it was considered by the Supreme Court in Bologna Bros. et al. v. Stephens et al., 206 La. 112, 18 So.2d 914, and the doctrine laid down in the Bonvillain case expressly re-affirmed.
So, it is clear now that as a predicate for a suit to rescind a completed sale of realty, it is not necessary, as said in McDonald & Coon v. James Vaughan, 14 La.Ann. 716, that actual eviction be had, but it suffices “if a perfect title exists in some third person, whereby it is rendered legally certain that his vendor had no title”. This, in the main, we find to be the situation in the present case.
The measure of defendant’s liability tenders a more difficult question. Article 2514 of the Civil Code reads: “If in case of eviction from a part of the thing, the sale is not canceled, the value of the part from which he is evicted, is to be reimbursed to the buyer according to its estimation, pro-portionably to the total price of sale.”
In this connection it should not be overlooked that plaintiff did not acquire the fee, nor any part of the fee, to the lots, but on the contrary, a servitude with limited life, less than ninety days.
Pertinent to the issue is Article 2511 of the Civil Code. It reads: “If the buyer be evicted from a part only of the thing sold, and it be of such consequence relatively to the whole, that the buyer would not have purchased it without the part from which he is evicted, he may have the sale canceled.”
Plaintiff Carroll, who acted for Ryan, testified that the lease was purchased with the view of making tests for oil and/or gas, and that had he known of the serious defect in the title he would not have bought the lease. That appears self-evident. Men who spend large sums of money in testing for oil, almost invariably have title examined before paying the price, and surely will not start to drill a well after they become aware that if the venture is successful others will materially share in the outcome without contributing any amount to the expense thereof.
Contrary to the rule, plaintiffs, relying upon defendant’s assurance of the validity of his title, did not have title to the lots investigated by an attorney prior to purchase. When they did so the defects in title were revealed. This suit followed.
Therefore, as to the lots, save No. 276, we think the suit well founded and the sale subject to rescission for the reasons just mentioned.
*840 As to Lot 276, we are of the opinion the rule is different. Plaintiffs knew this lot was not adjoining, but, on the contrary, was quite a distance from the others. While small in area, yet it is amply large enough for a well to he drilled on it. It stands to reason that they would not have paid for lease on this- lot had it had no value for exploiting purposes.
The testimony does not fix the value of the assignment so far as concerns Lot No. 276. A similar question was tendered in the Bonvillain case, supra, in which it was said: “If there be no evidence on the subject, the Court may assume that the relative value of the part is not greater than an average of the whole.” This rule was followed in Lockwood Oil Company v. Atkins, 158 La. 610, 104 So. 386. In this latter case the mineral lease covered two hundred forty (240) acres, of which the title to forty (40) acres was found to be not in the lessor. The Court rescinded the sale 'to the extent of this forty and gave judgment for its proportionate value; that is, for one-sixth (%) of the price paid for the whole acreage.
Appellant, in brief, endeavors to apply to this case the rule that a tenant, or possessor, is without right to contest the title of his landlord. This rule is well recognized and enforced where predial estates are involved, so long as the tenant is in actual possession, hut it has no application here as we are dealing with a sale of a thing, a mineral lease. He cites Weil v. Segura, 178 La. 421, 151 So. 639. In that case, inter alia, the Court simply held that the Lessee, under a mineral lease m undisturbed possession, when sued for rent, cannot contest his lessor’s title. In the present case the plaintiffs have not been in actual possession of the lots and they are not being sued for rent. In addition, it was held in Powell v. Rapides Parish Police Jury, 165 La. 490, 115 So. 667, that this rule does not apply to an ordinary mineral lease.
For the reasons herein - given, the judgment from which appealed, as between plaintiffs and the defendant, is amended by reducing the principal amount thereof to Eight Hundred Thirty-Three and sVim ($833.34) Dollars, and, as thus amended, it is affirmed. Costs of appeal shall be paid by the appellees. All other costs shall be paid by appellant.